## *Ex parte* NELSON HAWKINS.

### No. A-2131.   Opinion Filed December 13, 1913.

### (136 Pac. 991.)

1.  **CONSTITUTIONAL LAW — States — Lieutenant Governor—Absence of Governor—Exercise of Powers.** (a) The Constitution of the state grants certain clearly defined powers to the Governor, or the acting Governor, and vests him with a wide discretion in the discharge of many of his duties. Courts have no right to substitute their discretion for the discretion of the Governor, or the acting Governor, or to nullify any of his official acts; unless it clearly appears that the Governor, or acting Governor, has usurped power not granted him, or has used his discretion in such a manner as to violate the law.

    (b) The Constitution intends, and the public necessities require, that some one, with the powers of Governor, should always be in the state to approve bonds, honor requisitions, make appointments, fill vacancies, quell riots, and transact all other business which pertains to this office, without expense or delay to the people or interruptions in the administration of justice.

    (c) A Governor may visit other states, and travel in foreign countries, as he pleases, without forfeiting his office, and may carry his title with him; but his powers as Governor become dormant the very moment he crosses the state line, they reviving again as soon as he returns within the borders of the state.

    (d) The Governor cannot lawfully say to persons who have business with his office: "I am going into another state to attend banquets and play golf, or for any other purpose, and you must wait until it suits my convenience to return."

    (e) During the absence from the state or inability of the Governor to act, the Lieutenant Governor is vested with all of the powers of Governor.

2.  **STATES—Powers of Lieutenant Governor—Absence of Governor.** The powers of the Lieutenant Governor to act as Governor during the absence from the state, or the inability of the Governor to act, are not derived from the invitation or request of the Governor; neither can they be denied at the pleasure of the Governor, but they rest alone upon the provisions of the Constitution of Oklahoma.

3. **PARDON**—What Constitutes—Right to Revoke. An agreement or promise by the Governor, or acting Governor, to pardon a convict does not amount to a pardon. An absolute pardon takes effect upon its execution, and delivery, to the person pardoned, or to some one representing him, or as soon as it leaves the Governor for this purpose, and cannot be revoked by any official; but paroles and conditional pardons do not become effective and enforceable until they have been received and accepted by the prisoner, and they may be revoked by the Governor. **Ex parte Crump, ante,** approved and reaffirmed.

4. **HABEAS CORPUS**—Pleading—Exhibits—Impeachment of Recitals —Inconsistent Position. (a) Where a petition for a writ of habeas corpus has attached to it a parole granted to a petitioner, which has been accepted and agreed to by him, he is bound by the conditions and recitals of such parole, and will not be permitted to contradict or impeach them.
(b) Counsel are not permitted to take inconsistent positions in this court.

Petition for *habeas corpus* by Nelson Hawkins. Petition denied.

On the 21st day of June, 1909, petitioner was convicted of manslaughter in the first degree in the district court of Pontotoc county, and his punishment was assessed at confinement in the penitentiary for the period of 40 years. An appeal was taken to this court, and the judgment of the lower court was affirmed. See *Hawkins v. State,* 5 Okla. Cr. 276, 114 Pac. 356. During the month of September, 1911, Hon. Lee Cruce, Governor of the state of Oklahoma, absented himself from the state for a number of days; and during his absence, Hon. J. J. McAlester, Lieutenant Governor of the state, acted as Governor, and under the Constitution was vested with all of the powers of Governor, during the absence of the said Hon. Lee Cruce from the state of Oklahoma. See *Ex parte Crump, ante,* 135 Pac. 428, decided at the September term of this court. On the 21st day of September, 1911, Lieut. Gov. McAlester, as acting Governor, issued a parole to petitioner, who was then confined under and by virtue of his conviction and the judgment thereon as hereinbefore stated. Upon its face this parole is dated the 21st day of September, 1911, at the hour of 9:56 a. m. The parole was not presented to, and accepted by, petitioner until the 22d of September, 1911, as appears from the following indorsement thereon:

"I, Nelson Hawkins, hereby declare that I have carefully read, and do clearly understand the contents and conditions of the above parole agreement, and I hereby accept the same and pledge myself to honestly comply with all of the said conditions. Dated at McAlester, Oklahoma, this 22d day of September, 1911. [Signed] Nelson Hawkins. Witnesses: John P. Crawford. Ed. Lanier."

The record contains the following stipulation:

"It is stipulated between the petitioner and respondent herein that the Frisco Passenger Train No. 407 from St. Louis to Oklahoma City on the 21st day of September, A. D. 1911, being the train on which Governor Cruce returned to the state of Oklahoma, arrived within the borders of the state of Oklahoma between 8:04 and 8:06 a. m. of said date. Dated this the 20th day of November, 1913. [Signed] E. G. McAdams, Attorney for Petitioner. Charles West, Attorney General, Attorney for Respondent. C. J. Davenport, Asst. Atty. Gen."

Thereafter on the 29th day of September, 1911, the attention of Gov. Cruce being called to this matter by the county attorney of Pontotoc county, he revoked the parole granted by the Lieutenant Governor, and directed that petitioner should be taken into custody, and returned to the penitentiary to serve out that portion of his sentence which was unexpired at the date of said parole, in accordance with the original judgment and sentence of said court. This was accordingly done, and petitioner did not attempt to assert any right under the parole granted by the Lieutenant Governor, until the 15th day of November, 1913, when he applied to this court for a writ of *habeas corpus,* based upon the ground that the parole granted by the Lieutenant Governor was valid, and that the Governor was without power or authority to revoke the same. To this petition he attached, as Exhibit A, a copy of the parole granted by Lieut. Gov. McAlester, which upon its face shows that it was issued at the hour of 9:56 a. m. on the 21st day of September, 1911. He also attached, as Exhibit B, a copy of the revocation of the said parole, issued by Gov. Cruce on the 29th day of September, 1911. On November 19th petitioner amended his petition for a writ of *habeas corpus,* and alleged that the date, which appears upon the face of the parole, was not correct, and was not on said parole when

it was signed by said Lieutenant Governor; and further alleged it to be true that the parole was signed by the Lieutenant Governor about the hour of 8 a. m. on September 21, 1911.

*W. D. Halfbill* and *S. V. O'Hare,* for petitioner.

*C. J. Davenport,* Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. The Constitution of the state grants certain clearly defined powers to the Governor, or the acting Governor, and vests him with a wide discretion in the discharge of many of his duties. Courts have no right to substitute their discretion for the discretion of the Governor, or the acting Governor, or to nullify any of his official acts; unless it clearly appears that the Governor, or acting Governor, has usurped powers not granted him, or has used his discretion in such a manner as to violate the law. It is the duty of the courts to indulge every presumption in favor of the regularity of the official acts of the Governor, or the acting Governor, and only interfere where it is clear that he has violated the law.

This case presents simply a cold question of law, and must be decided as such without reference to any other considerations. Article 6, sec. 16 (Williams' Const. Okla. sec. 165), provides in express terms that all of the powers of the Governor shall devolve upon the Lieutenant Governor during the inability of the Governor to discharge the powers and duties of said office, and until such disability shall be removed. No one will contend that the powers of the Governor can be exercised by him during his absence from the state, any more than that a judicial officer of Oklahoma could open court and try cases, or could discharge any other official duty in another state, or upon foreign territory. The office of Governor of Oklahoma was not created for the benefit of the man who temporarily holds his position. It is in no sense his private property; but it is alone for the people of Oklahoma, and must be confined to Oklahoma, and cannot be placed upon wheels and hauled all over the face of the universe. The Governor may go to other states, and travel in foreign coun-

tries, with all of the military pomp and glory of the Commander in Chief of the Oklahoma Militia, as he pleases, without forfeiting his office, and may carry his title with him; but his powers as Governor become dormant the very moment he crosses the state line, and they revive again as soon as he returns and is within the borders of the state. During his absence, or inability to act, the Lieutenant Governor is vested with all of the powers of Governor. The business of the people requires that a Governor should always be in the state to approve bonds, honor requisitions, make appointments, quell riots, fill vacancies, and transact all other business which pertains to this office, without expense or delay to the people, or interruptions in the administration of justice. An emergency may arise at any moment requiring the presence of the Governor within the state. The Constitution provides that there shall always be some one within the state clothed with power to perform the duties of chief executive. The Constitution must be obeyed, let it please or displease whom it may. There is nothing more ridiculous than to contend that the Governor, as a matter of whim or caprice, can leave the state to attend banquets, or play golf, in other states, or for any other purpose, and say to those who have business with his office: "Wait until it suits my convenience to return." This question was fully considered by this court in the case of *Ex parte Crump, supra,* decided at the September term of this court. All that was said by Judge Doyle in that case is approved, and reaffirmed. It necessarily follows that, if Gov. Cruce was within the borders of Oklahoma, at the time that the Lieutenant Governor granted this parole, it was unauthorized by law and is a nullity.

Second. Counsel for petitioner contend that because the Governor wrote a letter, before leaving the state, to the Lieutenant Governor, inviting him to come to the capital and take charge of the office and see how it felt to be a real Governor, the Governor was estopped from denying the validity of any act of the Lieutenant Governor during the absence of the Governor from his office.

With this contention we cannot agree. It is not supported either by law or by reason. There is no rule of law as to how a real Governor should feel, except that he should act as the servant of the people. The powers of the Lieutenant Governor to act, during the inability of the Governor, are not derived from the invitation or request of the Governor; but they rest alone upon the provisions of the Constitution of Oklahoma. No matter what the Governor may have written the Lieutenant Governor, this neither added to, nor took from, his powers to act as Governor of Oklahoma during the absence from the state of the Governor.

Third. Counsel for petitioner contend that, because the application for the parole was presented to the Lieutenant Governor on the evening of September 20, 1911, and the Lieutenant Governor then considered said application, and stated that he would grant said parole, in contemplation of law, the parole was, in fact, granted on the evening of September 20, 1911, when the Governor was undeniably not within the borders of the state; but counsel failed to cite any authorities supporting this contention. An absolute pardon takes effect upon its execution and delivery, to the person pardoned, or to some one representing him; or as soon as it leaves the control of the Governor. It cannot be revoked. See *Ex parte Crump, supra.* But this is not true as to paroles or conditional pardons; they are revocable, and do not become effective and enforceable until they have been received and accepted by the prisoner. Such acceptance is a condition precedent to the validity of the paroles, or conditional pardon. The parole was not accepted by petitioner until the 22d day of September, 1911, which was 24 hours after the return of the Governor to the state of Oklahoma. The parole did not become valid and enforceable until it was accepted by petitioner. Suppose that a Governor, on the last day of his term, should promise an unconditional pardon to a prisoner, but through inadvertance, or on account of the press of other matters, should neglect to execute such instrument; who would contend that a prisoner could be released from custody upon such a showing as this?

Fourth. The original petition filed in this case alleged that petitioner was illegally restrained by the warden of the penitentiary, and alleged that he had been paroled on September 21, 1911, by Lieut. Gov. McAlester. Attached to the petition was the parole, which on its face shows that it was signed at 9:56 a. m., September 21, 1911; there was also attached to the petition the revocation of the purported parole, in which it is recited that Lee Cruce, Governor, was in the state at the time of the signing of the parole. The purported parole and its revocation were made a part of the petition.

It was therefore shown by the petitioner himself, by attaching to his petition the purported parole, and the revocation thereof, that the Governor has revoked the purported parole; and that the Governor was in the state at the time the Lieutenant Governor attempted to act. In the revocation of parole, attached to the petition, there is the recital that:

"The undersigned, Lee Cruce, Governor of the state of Oklahoma, was upon the said day and hour upon which the said parole was issued in the state of Oklahoma, and the said parole being granted without the knowledge and consent or signature of the Governor."

As stated, these exhibits, the purported parole and the revocation, were presented to the court by the petitioner himself. He was therefore in no position to say that the facts therein stated were not true. It is nowhere claimed that the day and hour upon which the parole was granted was not in the parole at the time of its acceptance by petitioner, or that it has since been in any manner altered. Petitioner having accepted the parole, he will not now be permitted to contradict any of its recitals. In *Ex parte Ridley*, 3 Okla. Cr. 350, 106 Pac. 549, 26 L. R. A. (N. S.) 110, this court said:

"The petitioner accepted and agreed to the conditions of the parole, thereby securing his release from imprisonment, and he is bound by its terms and conditions."

Such contradiction will not be permitted under any circumstances, in the absence of an allegation that petitioner was deceived or misled by some condition or recital of the parole. See *Rosson v. State*, 23 Tex. App. 287, 4 S. W. 897. Attorneys

will not be permitted to take inconsistent positions in this court. See *Newton Henry v. State, ante,* 136 Pac. 982, decided this term of court. Both the parole and the revocation thereof are documents of state, and public records, attested by the Secretary of State, and verified by the great seal of the state of Oklahoma. If it be permissible to contradict such instruments at all, which we do not concede, it should only be done under proper allegations and absolutely clear proof.

Other interesting questions are raised by counsel for petitioner; but, owing to the conclusion at which we have arrived, it is not necessary to discuss them. As the record presented by petitioner shows that the Governor was in the state when this parole was granted and accepted by petitioner, the Lieutenant Governor was without power to act, and his attempted parole of petitioner was void and a nullity and conferred no rights upon petitioner. The Governor was clearly within his legal right in the revocation of the attempted parole and ordering the arrest of petitioner.

The writ of *habeas corpus* is denied, and the warden of the penitentiary is directed to retain petitioner in his custody, until the expiration of the time fixed for his imprisonment in the original judgment of the district court of Pontotoc county.

ARMSTRONG, P. J., and DOYLE, J., concur.