Ex parte TOM COLLINS.

No. A-5796. Opinion Filed Oct. 10, 1925.
(239 Pac. 693.)

White & Nichols, for petitioner.

Edward M. Box, Freeling & Howard, and G. B. Fulton, Atty. Gen., for respondents.

EDWARDS, J. This is a proceeding in habeas corpus by petitioner, Tom Collins, who alleges that he is wrongfully and unlawfully deprived of his liberty and confined in the penitentiary by William S. Key, warden. Writ denied.

The petitioner alleges that the cause of his confinement is as follows: That on the 9th day of February, 1923, he was convicted in the district court of Tulsa county for larceny of an automobile and sentenced to a term of 5 years in the state penitentiary; that on the 13th day of October, 1923, he was paroled by J. C. Walton, Governor of the state; that thereafter the said J. C. Walton was impeached and the duties of his office devolved on M. E. Trapp, Lieutenant Governor; that on the 21st day of June, 1925, the said Lieutenant Governor, acting as Governor, unwittingly attempted to revoke said parole. He alleges that such attempt to revoke said parole was brought about by J. G. Duncan, acting as a member of what is termed a "state constabulary" and by Parker La Moore, secretary to the acting Governor; that said Duncan and La Moore caused the summary arrest of the said petitioner and caused him to be delivered to William S. Key, warden. Among other allegations, it is then alleged that the revocation of said parole and the continued incarceration of the petitioner is due to the connivance and procurement of the said Duncan and La Moore and other persons, in furtherance of the conspiracy to extort money from the petitioner, and was without a hearing to determine whether petitioner had complied with the terms of his said parole, and that said attempted revocation was not the act of the said M. E. Trapp, acting Governor, that said Lieutenant Governor, acting as Governor, was without power

to revoke said parole, and that said attempted revocation and confinement is unlawful.

W. S. Key, warden of the state penitentiary, represented by the Attorney General, filed his response, setting out that said petitioner was in his custody as warden of the penitentiary by virtue of a judgment and sentence from the district court of Tulsa county and the mandate of the Criminal Court of Appeals, affirming said judgment, and further pleading the parole and revocation thereof above mentioned.

J. G. Duncan, although not designated as a respondent, filed a response setting out that the application of petitioner has been called to his attention in which charges against the integrity of the said Duncan are made, and asks leave to refute same. He alleges that he is superintendent of the state bureau of criminal identification and investigation, appointed by the Adjutant General. He denies all the allegations of conspiracy, connivance, and fraud alleged by petitioner. He further alleges that petitioner has a record of criminality running back for a number of years, reciting various criminal acts of which he alleges the petitioner is guilty, and that, by reason of the same being brought to his knowledge, he recommended the revocation of the parole of petitioner. He asks leave to substantiate the same and to contradict the allegation by petitioner against said respondents.

Parker La Moore, although not named as a respondent, has filed a response in the nature of an interplea, praying that, on account of the charges made in the petition against his integrity and private and public character, he be granted leave to defend against such charges. He alleges that he is private secretary of M. E. Trapp, acting Governor. He pleads further the record under which the petitioner is incarcerated, and pleads that the revocation of the parole was for good and sufficient rea-

sons. He denies in its entirety all charges and allegations of misconduct charged against him, and asks that such charges be investigated by this court.

The allegation in the petition that the revocation of the parole was not the act of the chief executive gave a wide range to the evidence and the injection of matters which, without this allegation, would not have been admitted; but, under this allegation, and owing to the serious nature of the charges made in connection with this allegation, the evidence of both the petitioner and the respondent was permitted to be developed beyond the scope otherwise permissible.

The allegation that the revocation of the parole in question is not the act of the acting Governor, and was unwittingly made, is met by the flat contradiction of the acting Governor, who testified that the order of revocation was made advisedly, after due consideration, and for reasons by him deemed sufficient.

This evidence disposes of the allegation that the parole was unwittingly issued, and renders immaterial to the legal question before us all the evidence directed against J. G. Duncan and Parker La Moore, and renders immaterial their testimony in refutation of such evidence, and we do not give it any further consideration.

These collateral and extraneous matters out of the case, the contention of the petitioner is that the instrument designated a parole is a conditional pardon, and that the chief executive is without power to revoke the grant except after notice and hearing and proof that petitioner has violated the conditions of said grant of clemency. The question for determination, then, is: Did the acting Governor have the power, without notice and hearing, to revoke the grant of clemency to Tom Collins, and to order his arrest and return to the penitentiary to

serve the term imposed by the district court of Tulsa county.

From the pleadings and record it appears that, on February 16, 1920, after trial before a jury, the petitioner, in the district court of Tulsa county, was sentenced to a term of 8 years in the state penitentiary for larceny of an automobile. From said judgment and sentence he appealed to this court, and the sentence modified by reducing the punishment to a term of 5 years, and, as so modified, was affirmed and mandate issued on September 20, 1923. On the 27th day of September, 1923, the petitioner, by the then Governor J. C. Walton, was granted a reprieve for a period of 90 days. On the 13th day of October, 1923, he was granted a parole by the said Governor, a part of which is as follows:

"Now, therefore, I, J. C. Walton, Governor of the state of Oklahoma, by virtue of the power and authority vested in me by the Constitution and laws of the state of Oklahoma, do hereby grant unto the said Tom Collins a parole from said imprisonment upon the following terms and conditions, to-wit:

"First. That the said Tom Collins shall abstain from the use or handling of intoxicating liquors in any form; that he shall not gamble nor in any manner indulge in or conduct a game of chance; that he shall not carry firearms or other dangerous or deadly weapons under any circumstances; that he shall faithfully and industriously follow some useful and lawful occupation, and aid and support those dependent upon him; that he shall avoid all evil associations, improper places of amusement, all pool and billard halls, obey all the laws, and in all ways conduct himself as an upright citizen. * * *

"Third. It is expressly understood by the said Tom Collins that the Governor may revoke this parole for violation of any one or more of the conditions hereof, or for any other cause by him deemed sufficient.

"Fourth. That, in the event this parole shall be revoked at any time and the said Tom Collins shall be out

of the state of Oklahoma at the time of revocation of same, he waives all the rights and privileges allowed him under the Constitution and laws of the United States, or the laws of any foreign state, and expressly agrees to return to the state of Oklahoma, without the aid of requisition.

"And whereas, the said Tom Collins agrees to accept and comply with the said conditions, I extend unto him this parole under the above terms. * * *

"J. C. Walton,<br>"Governor of the State of Oklahoma."

"I, Tom Collins, hereby declare that I have carefully read and do fully understand the contents and conditions of the above parole agreement and hereby accept the same and pledge myself honestly to comply with the said terms.

"Dated at Tulsa, Oklahoma, on this the 16th day of October, 1923.                    Tom Collins."

On the 9th day of February, 1923, J. C. Walton, Governor of Oklahoma, having been impeached, and the duties of Governor having devolved on M. E. Trapp, Lieutenant Governor, an order revoking said parole was made in part as follows:

"Whereas, investigation by the bureau of investigation, made by Dr. J. G. Duncan and Charles McCloud, reveals that the said Tom Collins has been selling liquor and engaging in other illegal pursuits at Slick City, Oklahoma; and

"Whereas, Hon. John M. Goldsberry, county attorney of Tulsa county, Oklahoma, makes the following report to the Governor: 'At the recent special January, 1924, term of the United States District Court for the Eastern District of Oklahoma, at Tulsa, Tom Collins was indicted by the grand jury for violation of the federal Interstate Automobile Larceny Act':

"Now, therefore, I, M. E. Trapp, Governor of the state of Oklahoma, by virtue of the power and authority vested in me by law, do hereby revoke, cancel, and annul the parole heretofore granted the said Tom Collins, and

do order and direct all sheriffs and other peace officers of the state of Oklahoma to apprehend him wherever he may be found, take him into safe custody, and convey him to the Oklahoma State Penitentiary, at McAlester, where he will serve out his sentence according to the original judgment of the court. * * * "

The petitioner was thereupon apprehended, conveyed to and confined in the state penitentiary at McAlester, which confinement petitioner now challenges as illegal.

Touching the power of the chief executive to revoke a parole without notice and hearing, there are two lines of authorities—one line holding that notice and hearing is necessary in order to revoke a pardon or parole. Illustrative cases on this line are Ex parte Alvarez, 50 Fla. 24, 39 So. 481, 111 Am. St. Rep. 102, 7 Ann. Cas. 88; Ex parte Rice, 72 Tex. Cr. R. 587, 162 S. W. 901; State ex rel., etc., v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 39 Am. St. Rep. 582; In re Dumford, 7 Kan. App. 89, 53 P. 93.

The other line, holding that, where a convict is granted and accepts a parole, or even in some instances a conditional pardon, upon a breach of the conditions of such parole or conditional pardon, the same may be revoked by executive order, and the convict summarily committed to the penitentiary to serve the remainder of his sentence. Illustrative cases from numerous authorities supporting this line are as follows:

Fuller v. State, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 82 Am. St. Rep. 1, where it is said:

" * * * The executive clemency under it is extended upon the conditions named in it, and he accepts it upon those conditions. One of these is that the Governor may withdraw his grace in a certain contingency, and another is that the Governor shall himself determine when that contingency has arisen. It is as if the convict, with full competency to bind himself in the premises, had expressly

contracted and agreed that, whenever the Governor should conclude that he had violated the conditions of his parole, an executive order for his arrest and remandment to prison should be at once issued, and be conclusive upon him. * * * "

Spencer v. Kees, 47 Wash. 276, 91 P. 963, where the court reasons as follows:

" * * * This was a conditional pardon, such as the Governor had power to impose. He granted it as a matter of grace, and not of duty. He did not intend to completely exonerate the appellant or to release him from the force and effect of the sentence, but expressly provided that a failure to comply with the conditions 'shall cause the revocation of this pardon and the recommitment of the said Edward Spencer to the penitentiary to serve out the remainder of his term according to the sentence.' This language manifests a plain intention on the part of the Governor to himself maintain control over the pardon and to revoke the same upon failure of the conditions. If the provision that the Governor may issue his warrant to carry the pardon into effect refers only to the release of the convict, as contended by the appellant, then the control of a conditional pardon passes from the Governor immediately upon release of the prisoner. We think such result was not intended by the language used. This result, of course, follows from unconditional pardons, because in such case the release is conclusive. There is no more to be done. But in case of a conditional pardon the enforcement of the conditions is carrying the pardon into effect, as much so as the release. We are therefore of the opinion that the Governor had power to enforce the performance of the conditions, and, when he became satisfied that the conditions of the pardon were being violated, he was authorized to issue his warrant revoking the pardon under the express terms of the pardon and under the statute. * * * "

Owen v. Smith, 89 Neb. 596, 131 N. W. 914, in which the court used this language:

"The only question to be considered is whether the Governor, after having granted a parole to a convict,

may, without notice and hearing, revoke such parole and order the convict to be apprehended and reimprisoned for the remainder of his term of imprisonment. Appellant cites some authorities from other states which at first blush seem to sustain his contention; but an examination of those cases discloses the fact that they are based upon statutes essentially different from ours. As opposed to the cases cited by appellant, the Attorney General has cited authorities based upon statutes similar to ours, which amply sustain the action of the Governor. We do not deem it necessary to consider any of these cases, for the reason that we think the judgment of the district court must be affirmed under the very terms of the parole itself, and of section 570 of the Criminal Code, under which the Governor acted. The parole issued by Governor Shallenberger, after setting out certain conditions to be observed by the convict while at liberty, concludes thus: '(6) He shall, while on parole, remain in the legal custody and under the control of the Governor of the State of Nebraska. (7) He shall be liable to be retaken and again confined within the inclosure of the state penitentiary for any reason or reasons that shall be satisfactory to the Governor, and at his sole discretion, until he receives a copy of his final discharge through the warden.' * * * Any other construction of the law would not be a kindness to the inmates of the penitentiary; for, if the Governor is given to understand that every time he grants a parole he thereby restores the convict to full citizenship to such an extent that he cannot revoke such parole except upon notice and a full hearing, he would be very loath to exercise the humane prerogative which the Code now confers upon him. We think the provisions of the Code were properly construed by the district court, Appellant was at all times, while on parole, in the legal custody of the Governor, and subject at any time, for any reason or reasons that should be satisfactory to the Governor, and at his sole discretion, to be reimprisoned. He accepted a parole containing the conditions prescribed by law and must abide by them. * * * "

The Supreme Court of Oregon, in the case of In re Houghton, 49 Or. 232, 89 P. 801, 9 L. R. A. (N. S.) 737, 13 Ann. Cas. 1101, said:

"Some adjudications are cited as holding that a violation of a conditional pardon must be judicially determined, and that a convict cannot be rearrested or remanded to suffer his original sentence because of an, alleged nonperformance of the conditions upon a mere order of the Governor. Alvarez v. State, 50 Fla. 24, 39 So. 481, 111 Am. St. Rep. 102 (7 Ann. Cas. 88); State (ex rel. O'Connor) v. Wolfer, 53. Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 39 Am. St. Rep. 582; People v. Moore, 62 Mich. 496, 29 N. W. 80. But in neither of the cases referred to did the pardon provide that it might be revoked and the convict rearrested and remanded on order of the pardoning power for a violation of the condition. In the Alvarez Case, it is expressly stated that such a stipulation would be valid and enforceable in the manner provided, and it was so intimated in the Wolfer Case. * * * The prisoner accepted the pardon but violated its conditions. The Governor thereupon issued a warrant reciting the facts, and the prisoner was rearrested and reconfined in the penitentiary. He sought release by habeas corpus, but the court denied his application, holding that he was not entitled to a judicial determination of the fact of forfeiture and that the conditions were valid. The court said: 'It (the pardon) expressly provides that the Governor may by his warrant revoke it upon such showing of a violation of the conditions as he may deem sufficient. Upon this revocation the legal status of the petitioner must be regarded the same as it was before the pardon was granted. It must be remembered that the pardon was an act of grace. The petitioner had no right to demand it. It was founded on no right which he could enforce in any court. What he accepted was in the nature of a favor or gift. It was not such a contract as entitled him to have a judicial determination of forfeiture, in the face of his stipulation that the Governor might revoke it upon such showing as might be satisfactory to him.' Arthur v. Craig, 48 Iowa 264, 30 Am. Rep. 395. * * * "

See, also, Jamison v. Flanner, 116 Kan. 624, 228 P. 82, 35 A. L. R. 973, where the authorities are reviewed at some length.

In the case of Ex parte Horine, 11 Okla. Cr. 517, 148

P. 825, L. R. A. 1915F, 548, in which a parole containing a condition substantially the same as paragraph No. 3 in the parole in this case, it was held:

"A convict was granted and accepted a parole which expressly provided that the Governor might revoke the same and remand the party to prison for a violation of the conditions, or 'for any other reason by him deemed sufficient.' Held, that the Governor may order the convict to be so remanded without notice to him, and without giving him an opportunity to be heard."

A distinction is sought to be made between the conditions of the Horine parole, above mentioned, and the parole in this case. There is a difference in the wording, the conditions following a breach of the terms of the Horine parole being more fully expressed than the parole in this case, but in legal significance there is no such distinction as changes the rule of law applicable.

The people of this state, in the Constitution, have granted to the chief executive the power to issue pardons and paroles. Section 10, of article 6 of the state Constitution is in part as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. * * * "

There being no limitation on the power of the Governor, he may grant an unconditional pardon which upon delivery to the offender completely exonerates him and releases him from the force and effect of the sentence, as was said in the case of Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L. R. A. (N. S.) 1036, a "pardon" is an act of grace and mercy bestowed by the state through its chief executive, upon offenders against its laws after conviction, and a full, unconditional pardon

reaches both the punishment prescribed for the offense and the guilt of the offender; it obliterates in legal contemplation the offense itself, and hence its effect is to make the offender a new man.

The power to grant pardons carries with it the power to grant a pardon upon conditions named, where the conditions are not illegal, immoral, or incapable of being performed. Said conditional pardon does not completely exonerate an offender or release him from the force and effect of the sentence except, upon a compliance with the conditions named and a failure to comply, such conditional pardon may be revoked and the recipient apprehended and returned to the penitentiary to serve the remainder of the sentence imposed upon him.

A parole as the term is used in criminal law may be defined as the release of the convict from imprisonment upon certain conditions to be observed by him and his sentence thereby suspended during liberty thus granted. Ex parte Ridley, 3 Okla. Cr. 351, 106 P. 549, 26 L. R. A. (N. S.) 110; 29 Cyc. p. 1562, par. F.

The distinction between a conditional pardon and a parole is not wide. Both are grants of clemency. Both may be revoked. In the case of a conditional pardon the convict is at liberty upon a condition, and in a case where the pardon does not become operative until the recipient has performed the condition, when the condition has been performed it becomes absolute, or where it is conditioned that upon the transpiring of some event it becomes void, the convict is at liberty until the event transpires. In the case of a parole, the convict has a mere suspension of sentence, and is still under constructive custody and supervision by the public authority.

The instrument upon which the petitioner is at large in this case is a parole and not a conditional par-

don. By its terms petitioner is held in constructive custody; certain rules of conduct are laid down. His association and occupation are limited, and he is required to report monthly to the sheriff of Tulsa county to give an account of his earnings and the amount applied to the support of his dependents. It is further specifically stipulated in said parole, as hereinbefore set out, that the Governor may revoke for violation of any of the conditions named or "for any other cause by him deemed sufficient." It is further provided that, in case petitioner should be out of the state at the time of revocation, he waives all rights and privileges allowed him under the Constitution and laws of the United States or of any foreign state and expressly agrees to return without requisition; this condition clearly contemplating that it was the agreement and understanding that a revocation might be made without notice and hearing, and in the absence of the recipient.

We are clearly of the opinion that, when a parole is granted containing the conditions of the Collins parole, upon a violation of any of the conditions named, or for any other cause by the Governor deemed sufficient he has power, without notice and hearing, to revoke the parole and order the apprehension and confinement of the convict, and that the courts do not have the power to review the acts and discretion of the chief executive, though the legality of the confinement of a petitioner may be inquired into by habeas corpus, and if upon any such hearing it should appear that the person confined is not the convict charged or that the revocation of the parole is a forgery, or that the official attempting to revoke is without authority, he would be entitled to be released. But where there is no question of identity, and it is made to appear that the petitioner in such case is held upon a valid judgment and sentence, and that his parole has

been revoked by the chief executive, his incarceration is legal.

As applied to the facts in this case, the petitioner was lawfully deprived of his liberty when he was convicted in the district court of Tulsa county for larceny of an automobile, he was subject to confinement upon the judgment and sentence in that case until his confinement was stayed by the parole extended to him. Upon the revocation of that parole he was a convict at large subject to summary arrest and imprisonment under the original sentence.

Counsel for petitioner further argue that, since the terms of the parole above quoted provided that the "Governor" may revoke the parole, that in no event could any official other than the real Governor of the state make an order of revocation, and that the order of revocation made being by the Lieutenant Governor, as acting Governor, it is invalid.

Sections 15 and 16, art. 6, of the Constitution, are as follows:

"Sec. 15. The Lieutenant Governor shall possess the same qualifications of eligibility for office as the Governor. He shall be president of the Senate, but shall have only a casting vote therein, and also in joint vote of both houses. If, during a vacancy of the office of Governor, the Lieutenant Governor shall be impeached, displaced, resign, die or be absent from the state, or become incapable of performing the duties of the office, the president, pro tempore, of the Senate, shall act as Governor until the vacancy be filled or the disability shall cease; and if the president, pro tempore, of the Senate, for any of the above enumerated causes, shall become incapable of performing the duties pertaining to the office of Governor, the Speaker of the House of Representatives shall act as Governor until the vacancy be filled or the disability shall cease. Further provisions for succession to the office of Governor shall be prescribed by law.

"Sec. 16. In case of impeachment of the Governor, or of his death, failure to qualify, resignation, removal from the state, or inability to discharge the powers and duties of the office, the said office, with its compensation, shall devolve upon the Lieutenant Governor for the residue of the term or until the disability shall be removed."

These sections of the Constitution have had consideration by this court in the following cases: Ex parte Crump, supra; Ex parte Hawkins, 10 Okla. Cr. 396, 136 P. 991; Ex parte Cullens, 11 Okla. Cr. 644, 150 P. 90.

The Crump Case involved the validity of a pardon granted by J. J. McAlester, Lieutenant Governor, during the absence from the state of Governor Cruce, and which, upon the return to the state the Governor attempted to revoke, and this court there said:

"* * * Impeachment of the Governor, his death, failure to qualify, or resignation, involves necessarily a vacancy in the office, and, if any one of said events occur, the right of the Lieutenant Governor to act is not open to question or doubt; and if, during a vacancy in the office of Governor, the Lieutenant Governor shall be impeached, displaced, resign, or die, then the right of the president pro tempore of the Senate to act as Governor is unquestionable. * * *"

The Hawkins Case, supra, rested upon a similar state of facts, but in that case it was shown that Governor Cruce was within the boundaries of the state when the parole was signed by the Lieutenant Governor, and he was therefore without power to act, and, in deciding the case, the court said:

"The office of Governor of Oklahoma was not created for the benefit of the man who temporarily holds this position. It is in no sense his private property; but it is alone for the people of Oklahoma, and must be confined to Oklahoma, and cannot be placed upon wheels and hauled all over the face of the universe. The Governor may go to other states, and travel in foreign countries,

with all the military pomp and glory of the Commander in Chief of the Oklahoma Militia, as he pleases, without forfeiting his office, and may carry his title with him; but his powers as Governor become dormant the very moment he crosses the state line, and they revive again as soon as he returns and is within the borders of the state. During his absence, or inability to act, the Lieutenant Governor is vested with all of the powers of Governor. The business of the people requires that a Governor should always be in the state to approve bonds, honor requisitions, make appointments, quell riots, fill vacancies, and transact all other business which pertains to this office, without expense or delay to the people, or interruptions in the administration of justice. An emergency may arise at any moment requiring the presence of Governor within the state. The Constitution provides that there shall always be some one within the state clothed with power to perform the duties of chief executive. * * * "

The Cullens Case, supra, reaffirms the holdings of the Crump Case.

It is our view of the law that the condition in the parole under consideration providing that the "Governor" may revoke the parole is not to be construed in a technical sense as applying to the individual then holding the office of Governor, or to a successor who must in strict and technical sense be designated by the term "Governor," but that, in the contemplation of the parties as expressed in the parole, and in contemplation of law, the parole might be revoked by any person legally discharging and exercising the functions of Governor, whether he be designated as Governor, Lieutenant Governor, acting Governor, or otherwise. It is the function of the office and not the official designation of the person exercising the function that determines the authority to revoke.

For the reasons assigned, the writ is denied, and the

petitioner remanded to serve the sentence of the district court of Tulsa county.

BESSEY, P. J., and DOYLE, J., concur.