## Ex parte F. E. WARREN.

No. A-6770.   Opiniin Filed March 24, 1928.
(265 Pac. 656.)

See, also, 25 Okla. Cr. 358, 220 P. 1118.

Leverett Edwards, for petitioner.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for respondent.

DAVENPORT, J. This is an original application to this court for a writ of habeas corpus, in which the petitioner, F. E. (Ed) Warren, alleges that he is restrained of his liberty, and that he is unlawfully imprisoned in the penitentiary by John Q. Newell, warden; that he was committed to the state institution by the district court of LeFlore county in 1920 to serve a term of life imprisonment for murder. Petitioner says:

"That this sentence was by the Governor of the state, on or about September 14, 1923, commuted to a term of six years. The commutation referred to was in writing, unconditional in form, to take effect immediately, and was signed by J. C. Walton, Governor; attested by R. A. Sneed, secretary of state, sealed with the seal of the state of Oklahoma, and duly and regularly accepted by Ed Warren; the same being regularly delivered to him for his benefit and to others in his behalf. Petitioner says that Ed Warren has served more than his full term of six years and is entitled to his liberty. Petitioner further says that said unlawful restraint is to his best knowledge and belief based upon a certain communication purported to be an order and revocation issued on or about the 10th day of November, 1923, signed by one J. C. Walton, Governor, but petitioner states that said order of revocation, is now and has been at all times void and of no effect; that there is no authority of law for such communication; that the said Walton had no jurisdiction, no power, and no authority to make the same, or give it any force or effect, but it is absolutely void and should be canceled and held for naught."

Upon the allegations of the petitioner a writ was duly and regularly issued and served upon the warden of the penitentiary, and a return was duly made by the warden, as respondent, to the petitioner's allegations, the response being:

"First. Respondent denies each and every material allegation of the petition, and demands strict proof thereof.

"Second. For further return on the said writ respondent states the facts to be as he understands them, as follows:

"That on or about the 4th day of September, 1920, the said petitioner, Ed Warren, was received into the state penitentiary of Oklahoma, on a commitment for the crime of murder, from the district court of LeFlore county, for a term of life imprisonment, and that your respondent is now holding the said petitioner under the said commitment. That in the month of December, 1922, this petitioner applied to Hon. J. B. A. Robertson, then Governor of the state of Oklahoma, for executive clemency, which said petition was acted upon by Hon. J. C. Walton, Governor of the state of Oklahoma, in the month of September, 1923, by issuing a commutation of the sentence of this petitioner from life imprisonment in the penitentiary to a term of 6 years. Said commutation is hereto attached and made a part of this return, marked Exhibit A. That thereafter, on the 10th day of October, 1923, and before the taking effect of the expiration of the term of imprisonment of six years as stated in the purported commutation of sentence, the said J. C. Walton, then the duly qualified and acting Governor of the state of Oklahoma, revoked said commutation of sentence and recalled and canceled the same, and filed said revocation of commutation in the office of the secretary of state, which said revocation of commutation was attested by R. A. Sneed, secretary of state, under the great seal of the state of Oklahoma, on the 10th day of October, 1923, which said commutation of sentence is attached hereto marked Exhibit B and made a part hereof. And the said original with the cancellation of the same, indorsed on the face thereof, are hereto attached marked Exhibits C and D.

"Further, respondent says that the said purported commutation of sentence was procured by fraud on the part of the petitioner and others in his behalf, and that the same was revoked by the said J. C. Walton, Governor of the state of Oklahoma, on the 10th day of October, 1923, before the date said commutation would take effect and before this petitioner acquired any rights thereunder, for the reason that the same was procured by fraud on the part of the said petitioner and others in his behalf.

On November 30, 1927, the petitioner filed a demurrer to the return of the respondent to the writ of habeas corpus, which demurrer, omitting the caption is as follows:

"Comes now Ed Warren and demurs to the return or answer of the warden made on the writ in this case, and for cause of said demurrer says that the said return does not state facts sufficient to authorize said warden to exercise any restraint over the person of this petitioner."

That part of section 10, art. 6, of the Constitution, that we deem necessary to quote, is as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law."

It appears from the record in this case that the Governor, acting within his authority, commuted the sentence of the petitioner from life imprisonment to six years; that at the time of the commutation the prisoner was serving a life sentence; that the commutation was duly signed by the Governor, attested by the secretary of state, with seal attached, and delivered to a representative of the petitioner, who in turn delivered it to the petitioner, and petitioner filed the same with the warden of the penitentiary; and the warden entered the same of record showing the sentence of the petitioner had been commuted from life imprisonment to six years. After the commutation had been accepted by the petitioner and filed with the warden and his record made showing the commutation of sentence to six years and the prisoner had served several days, the Governor issued an order attempting to cancel and revoke the commutation.

The question to be determined is, Has the Governor of this state the power to revoke a commutation or pardon after it has been duly accepted and delivered to the peti-

tioner, or his representative, and after the record in the penitentiary show the commutation or pardon?

In the case of Jones v. Sneed, 101 Okla. 295, 225 P. 700, the court uses this language:

"Syl. 3. A pardon or commutation is a mere matter of grace, and until this act of clemency is fully performed, neither benefit nor rights can be claimed under it. Simple intention on the part of the executive to bestow a pardon confers no right, and is perfectly nugatory until the intention may be said to be fully completed. This intention may be said to be fully completed when the pardon is signed by the executive, properly attested, authenticated by the seal of the state, and delivered, either to the person who is the subject of the favor or to some one acting for him or on his behalf. Whenever these things are done, the grantee or donee of the favor becomes entitled as a matter of right to all the benefits and immunities it confers, and of which he cannot be deprived by revocation or recall."

In Ex parte Reno, 66 Mo. 266, 27 Am. Rep. 337, Reno was granted commutation of sentence which was shown to have been received at the penitentiary and a record entry made of it. The Governor granting the commutation retired from office, and the incoming Governor issued a general order attempting to revoke all pardons or commutations signed by his predecessor and not delivered. The court in its first syllabus says:

"A pardon or commutation of sentence takes effect, and the recipient of executive clemency cannot be deprived of its benefits and immunities by a subsequent revocation, when it has been signed by the executive, properly attested, authenticated by the seal of the state, and delivered either to the recipient, or to some one acting for him, or on his behalf."

In the case at bar it is apparent that the petitioner when he received the commutation did all that was possible for him to do by filing the same with the warden of the penitentiary, having the record show that his sentence had been changed from life imprisonment to six years, and

went on his way to finish up the term of his imprisonment. He had been in prison since 1920, something like three years. There was nothing further the petitioner could do but continue his service until the expiration of the time under the new sentence that he had received by the act of the Governor, and from the time of receiving of the commutation he was entitled to the benefits of the prison rules as applicable to the new sentence.

In the case of State ex rel. Murphy v. Wolfer, Warden of the Prison, 127 Minn. 102, 148 N. W. 896, L. R. A. 1915B, 95, the court says:

"It is well settled that a commutation of a sentence is a substitution of a less for a greater punishment. After commutation the commuted sentence is the only one in existence, and the only one to be considered. After commutation, the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been for the commuted term." Johnson v. State, 183 Ala. 79, 63 So. 123.

In re Hall, 34 Neb. 206, 51 N. W. 750:

"It is well settled that a full, unconditional pardon takes effect upon delivery either to the person who is the subject of the favor, or to some one acting for him or in his behalf."

After delivery the pardon cannot be revoked except for fraud. Ex parte Sam Stewart, 11 Okla. Cr. 400, 146 P. 922; Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L. R. A. (N. S.) 1036; Ex parte Nelson Hawkins, 10 Okla. Cr. 396, 136 P. 991.

The order of the Governor ordering the commutation canceled and set aside was made without the petitioner's knowledge or consent, and, so far as shown by the record, without any information on behalf of the Governor excepting a newspaper report. In this case the respondent sets up and attempts to justify his holding of the petitioner in custody on the ground that the commutation was secured

by fraud and that the Governor had the authority to revoke the same.

The record in the pardon and parole office shows many recommendations for executive clemency for the petitioner and individual letters. There are also a number of protests, but from a careful examination of all the testimony in the case, the recommendations and requests on file for clemency, and of the protests, there is not sufficient evidence to show that when the Governor signed the commutation and delivered the same that fraud was practiced upon him. Nor is there any evidence in the record sufficient to show that when the Governor attempted to revoke the commutation he had any evidence before him showing fraud had been practiced in securing commutation. The evidence shows that the petitioner had nothing to do with the preparing of the application or the securing of indorsements. Petitioner knew there was a sentiment against him securing executive clemency in the county where the alleged offense took place. The respondent offered some testimony by Mr. Babb, who had assisted in the prosecution when the prisoner was tried, but, when thoroughly analyzed, it shows that Mr. Babb, as prosecutor, and some other citizens of LeFlore county, had protested the granting of executive clemency.

The Attorney General in his brief has argued at length the question of fraud, and the right of the Governor to revoke the commutation where fraud was practiced upon the Governor. This is unquestionably the law, and if the facts showed such a contention as presented by the brief of the Attorney General, then the petitioner in this case would stand before this court on a right claimed by him that had no foundation.

After a careful examination of the authorities cited by the Attorney General, we do not think they apply to the facts in this case. The demurrer of the petitioner to the response, we think, should be overruled, it being a general

demurrer, the respondent pleading a revocation of the commutation upon which the petitioner relies for relief.

Having reached the conclusion that in the case before us there is not sufficient evidence to show fraud in procuring the commutation, the action of the Governor in revoking the commutation is without authority of law and void. The prisoner having served out the full term to which his sentence was commuted, his further imprisonment is illegal and he is entitled to be discharged from the imprisonment of which he complains.

Writ granted.

DOYLE, P. J., concurs.

EDWARDS, J., not participating.