# Ex parte W. J. (BILL) EDWARDS.

No. A-10475.    Feb. 24, 1944.

(146 P. 2d 311.)

Mathers & Mathers, of Oklahoma City, and Geo. B. Forrester, of Suphur, for petitioner.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, P. J. This is an original proceeding in habeas corpus instituted by W. J. (Bill) Edwards to secure his release from confinement in the State Penitentiary.

The verified petition and supporting affidavits allege in substance that petitioner was granted a parole from the State Penitentiary at McAlester on the 1st day of January, 1942, by Governor Leon C. Phillips. A copy of the parole is attached to the petition.

Said petition further alleges that the petitioner went immediately to the State of Arizona and commenced working in defense work, but that on October 14, 1943, the acting-Governor, James E. Berry, arbitrarily and capriciously revoked said parole and caused the petitioner to be recommitted to the State Penitentiary where he is now confined.

The petitioner further alleged that he had, at all times since the granting of said parole, faithfully kept all the terms and conditions thereof and had been a peaceable and law-abiding citizen. That while he was at his home in Phoenix, one J. Z. Armstrong, a state investigator from Oklahoma, came to him with an officer from Phoenix and questioned him at length. That the investigator accused him of paying $500 to the former Governor's pardon and parole agent to secure his parole. That he had not paid any money to secure his parole and to his knowledge no one had paid any money to secure clemency for him, and for that reason he refused to agree to return to Oklahoma and testify at the trial of the former pardon and parole agent that he had paid him money to secure his parole.

That two days after he had this conversation with the investigator, his parole was revoked and he was returned to Oklahoma.

Also attached to the petition was a letter from one J. T. Parks, uncle of the petitioner, and the party who had helped him secure his parole, in which he states that he did not pay anyone any fees for securing the parole of the petitioner. Also attached are the social security slips issued to the petitioner while he was working for a construction company at Phoenix, Ariz., during a portion of the time when he was at liberty on the parole.

There are many terms and conditions imposed upon the petitioner by the terms of the parole, among which are the following:

"First: That the said W. J. Edwards, Number 39251, shall obey all the laws and in all ways conduct himself as a moral and upright citizen; that he shall industriously follow some gainful occupation and shall be self-supporting, and support himself and his family independent of all relief or made work, such as NYA, WPA, or kindred organizations; that in this time of War, he shall not only support himself, but shall go to the defense of his country by buying of defense bonds or the performance of some labor calculated to aid in National Defense.

"Second: That the said W. J. Edwards, Number 39251, shall report in writing to the Pardon and Parole Office, State Capitol, Oklahoma City, Oklahoma, once each thirty days, such report to give his post office address, the name of his employer, the nature of the business in which he is engaged, the average monthly earnings, and the names of at least two persons to whom he refers who know his statements to be true.

"Third: It is expressly understood by the said W. J. Edwards, Number 39251, that the Governor may revoke this parole for the violation of one or more of the conditions hereof, or for other causes by him deemed sufficient."

Also, as a part of the parole is attached a statement signed by the petitioner, which reads:

"I, W. J. Edwards, Number 39251, hereby declare that I have read and do fully understand the conditions of the above parole agreement, and I hereby accept the same and pledge myself honestly to comply with said terms."

The Attorney General, on behalf of the warden of the State Penitentiary, filed a demurrer to the petition.

For the purpose of disposing of the legal questions involved, the demurrer admits the truthfulness of all the allegations set forth in the petition, but alleges that this court is without authority to question the validity of the revocation of a parole issued by the Governor under the terms and conditions of a parole such as the one in question.

The Constitution confers the power to grant paroles and other forms of executive clemency on the Governor and provides as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction and the date of commutation, pardon, parole, or reprieve." Art. 6, sec. 10, Okla. Const.

The Legislature has provided for the re-arrest of a paroled convict. 57 O. S. 1941 § 346 provides:

"If a paroled convict shall at any time be guilty of a violation of any of the conditions of his parole, he may, upon the order of the Governor, be re-arrested and recom-

mitted, without further proceedings, to confinement for the remainder of, and under the terms of, his original sentence."

It was insisted at the hearing before this court by petitioner's counsel that since the Legislature was authorized to prescribe the regulations under which the Governor might issue paroles, and also the manner in which the same may be later revoked, that it was incumbent upon the Chief Executive, under the above statute, to find that the parolee had violated the specific terms of the parole before he would be authorized to issue a revocation.

The question as to whether a convict released upon a parole is entitled to a hearing after the parole has been revoked by order of the Governor has been settled in the case of Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L. R. A., N. S., 110, in which it is stated:

"When a convict has been released upon a parole, and where said parole has been revoked by order of the Governor for violation of the conditions thereof, in the absence of a statute or of an express provision of the parole providing for a hearing, the convict is entitled to a hearing on habeas corpus, before the Criminal Court of Appeals, or the district court of the county where he is held, in order that he may show, if he can, that he has performed the conditions of the parole, or that he has a legal excuse for having not done so, or that he is not the same person who was convicted."

The matter of the issuance and revocation of executive clemency is a fruitful source of controversy. A most honest and efficient Governor will sometimes be imposed upon in the granting or refusal of executive clemency. It was with this thought in mind, no doubt, that the framers of our Constitution provided that the Chief Executive alone could grant reprives, pardons, paroles, etc., but as a part of the same constitutional grant to the Governor it

was further provided that these acts of executive clemency could only be issued subject to such regulations as may be prescribed by the Legislature. · The Legislature of Oklahoma, probably because of some of the language used in Ex parte Ridley, supra, has never attempted to pass any legislation which might place any limitations or restrictions upon the pardoning power of the Governor.

There have been several cases decided by this court similar to the instant case, but in none of them has there been a discussion of the validity and effect of the statute hereinabove quoted. In Ex parte Horine, 11 Okla. Cr. 517, 148 P. 825, it is held:

"The Governor of the state has the power to annex to a pardon or parole any condition precedent or subsequent, provided it be not illegal, immoral, or impossible to be performed.

"An executive order revoking a parole and directing the re-arrest and return to custody of the convict without giving him an opportunity to be heard is not violative of the constitutional guaranties that no person shall be deprived of his liberty without due process of law, and 'that no warrant shall issue but upon probable cause, supported by oath or affirmation'; since, being a convict at large by executive clemency, which he has accepted on the conditions therein stated, the legal status of the convict upon the revocation of the parole becomes the same as it was before the parole was granted.·

"A convict was granted and accepted a parole which expressly provided that the Governor might revoke the same and remand the party to prison for a violation of the conditions, or 'for any other reason by him deemed sufficient.' Held, that the Governor may order the convict to be so remanded without notice to him, and without giving him an opportunity to be heard."

In the case of Ex parte Woodward, 58 Okla. Cr. 333, 53 P. 2d 288, it is stated:

"Where a parole is granted a convict, which expressly provides that the Governor may revoke the same for violation of any one or more of the conditions thereof, or 'for any other cause by him deemed sufficient,' held, that the Governor may revoke such parole and order the convict remanded without notice to him, and without giving him an opportunity to be heard."

See, also, Ex parte Collins, 32 Okla. Cr. 6, 239 P. 693.

The statute relied upon by petitioner does not aid petitioner because he accepted the terms of the parole which provided that the Governor might revoke the parole for violation of one or more of the conditions thereof, or for other causes by him deemed sufficient. We think the reasoning set forth in the above decisions control in the disposition of the petitioner's contention. The revocation issued by the Acting Governor does not attempt to recite any certain acts of the petitioner which constituted a violation of the terms and conditions of the parole, but it simply states, "Whereas, sufficient cause appearing to revoke said parole, etc."

The convict was not forced to accept the parole. He had the option of accepting or rejecting it under the terms and conditions therein imposed. When he did give his written acceptance of the parole with the condition inserted therein that it could be revoked for any cause deemed sufficient by the Governor, he became bound by such terms and may not question the motivating influence behind the revocation. Even for the grossest abuse of this discretionary power vested in the Governor the law affords no remedy. The courts have no concern with the reasons which actuate the executive. The discretion exercised by him under the terms and conditions of the parole herein involved is beyond the control or legitimate criticism of the judiciary.

As a matter of public policy and to avoid litigation such as here presented, it would be better for the Chief Executive to insert in the revocation the grounds for such action. The failure to do so does not invalidate the revocation, but it does encourage litigation, such as the instant action. There was no explanation of the grounds for the revocation of the parole inserted in the revocation and since this cause was submitted on a demurrer to the petition no explanation of the causes for the revocation of the parole have been given.

It follows, by reason of the foregoing authorities, that the demurrer of the Attorney General to the petition should be sustained and the writ of habeas corpus denied.

It is so ordered.

BAREFOOT, J., concurs. DOYLE, J., not participating.