Ex parte ROBERT H. DENTON.

No. A-9833.   April 4, 1940.
(101 P. 2d 276.)

Robert H. Denton in pro. per.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

PER CURIAM. This is an application for discharge from imprisonment in the penitentiary by writ of habeas corpus on the part of Robert H. Denton.

Petitioner was convicted of murder in the district court of Oklahoma county. On appeal to this court, duly perfected, the judgment was affirmed. Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136, 1140.

On rehearing the court said:

"Per Curiam. * * * Pending the rehearing, we are officially advised that the Governor of this state, under his constitutional authority, has extended clemency to plaintiff in error by commuting the sentence from death to life imprisonment and that such clemency has been accepted."

The petitioner here contends:

"That the commutation is a change of sentence, that a change of sentence involves imposition of another sentence and constitutes a violation of statutes designed to

protect rights of the defendant whose sanity has been made an issue and is in doubt.

"And further contends that the Governor's office erred in commutation of sentence, that the error constituted a violation of defendant's rights as defined by Oklahoma statutes, and was a violation of such statutes.

"That the Governor's action imposed a sentence far more severe, far more rigorous (when defendant's mental condition is considered), than the original penalty of death imposed by the jury in the case of State v. Denton.

"The defendant contends that the only legal clemency the Governor can grant on grounds of insanity, or where defendant's sanity is at issue and is in doubt, is a full pardon, similar to the action of a jury, which is instructed to, and required to acquit defendant when an insanity plea is offered and substantiated to a jury's satisfaction in any criminal case.

"The defendant respectfully submits that six full years of a life sentence have been served, that this time is equivalent to eleven years of penal servitude when allowance for a first-class prison record is made in accordance with prison rules and that this writ and appeal were filed as soon as defendant's mental condition permitted full realization of his legal status. The defendant calls the court's attention to the fact he was transferred to the Western Oklahoma Hospital at Supply, was given the insulin shock treatment for dementia praecox, and was at the Western Oklahoma Hospital for a period of approximately three years. State psychiatrists cannot pronounce defendant sane even now and it is very likely that defendant's mental ailment will require his return to a state hospital at intervals for the remainder of his life.

"Defendant's primary purpose, in seeking a release from this illegally imposed sentence, is to return to the Western Oklahoma Hospital or some other mental institution for further care and treatment necessary to return to complete normalcy, and forestall a possibly impending relapse.

"The petitioner, Robert H. Denton, acting in his own behalf, believes that an injustice has been done and respectfully asks that the appellate court issue a mandate ordering his unconditional release from a prison sentence at the state penitentiary at McAlester, Okla."

Which application was duly verified by petitioner.

To this application the Attorney General filed a general demurrer on the ground that the allegations therein were not sufficient to show that petitioner was entitled to have the writ of habeas corpus issue, and that the same does not state facts sufficient to entitle petitioner to any relief. Citing Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L.R.A., N.S., 110; Ex parte Warren, 39 Okla. Cr. 348, 265 P. 656; Biddle v. Perovich, 274 U. S. 480, 47 S.. Ct. 664, 71 L. Ed. 1161, 52 A.L.R. 832.

It is the well-settled general rule that, where the facts alleged in a petition for a writ of habeas corpus, if established, would not warrant a discharge of the petitioner, the writ will be denied.

In Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 551, 26 L.R.A. (N.S.) 110, it is said:

"Under our Constitution the pardoning power is vested exclusively in the Governor of the state, and any law which restricted this power would be unconstitutional and void. The co-ordinate departments of the government have nothing to do with the pardoning power, except that the Legislature may by law provide how applications may be made, and is entitled to a report at each regular session of the action taken. * * *

"The power conferred by section 10 [article 6] of the Constitution is practically unrestricted, and the exercise of executive clemency is a matter of discretion. It cannot, however, be treated as a privilege. It is as much an official duty as any other act. It is vested in the Governor, not for the benefit of the convict only, but for

the welfare of the people, who may properly insist upon the performance of that duty by him if a pardon or parole is to be granted."

In Ex parte Jones, 25 Okla. Cr. 347, 220 Pa. 978, 979, we said:

"The Constitution deals with the pardoning power not as a prerogative claimed by divine right, but as an adjunct to the administration of justice, recognized in all civilized governments as necessary by reason of the fallibility of human laws and human tribunals. * * * The indiscriminate exercise of the pardoning power is a blow at law and order, and is an additional hardship upon society in its irrepressible conflict with crime and criminals."

In Ex parte Horine, 11 Okla. Cr. 517, 148 P. 825, L.R.A. 1915F 548, the court held:

"The Governor of the state has the power to annex to a pardon or parole any condition precedent or subsequent, provided it be not illegal, immoral, or impossible to be performed."

In Ex parte Warren, supra, the court held:

"A commutation of sentence is a substitution of a less for a greater punishment, and the commuted sentence is the only one in existence, and the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been for the commuted term."

In the case of Biddle v. Perovich, supra, the Supreme Court of the United States held:

"The consent of a convict is not necessary to the commutation of his sentence of death to imprisonment for life."

And:

"The constitutional power of the President to grant reprieves and pardons for offenses against the United

States extends to the commuting of a sentence of death for murder to imprisonment for life."

Mr. Justice Holmes, speaking for the court, said:

"We will not go into history, but we will say a word about the principles of pardons in the law of the United States. A pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the constitutional scheme. When granted it is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed. See Ex parte Grossman, 267 U. S. 87, 120, 121, 45 S. Ct. 332, 69 L. Ed. 527 [535], 38 A. L. R. 131. Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent, determines what shall be done. So far as a pardon legitimately cuts down a penalty it affects the judgment imposing it. No one doubts that a reduction of the term of an imprisonment or the amount of a fine would limit the sentence effectively on the one side and on the other would leave the reduced term or fine valid and to be enforced, and that the convict's consent is not required.

"When we come to the commutation of death to imprisonment for life it is hard to see how consent has any more to do with it than it has in the cases first put. Supposing that Perovich did not accept the change, he could not have got himself hanged against the executive order. Supposing that he did accept, he could not affect the judgment to be carried out. The considerations that led to the modification had nothing to do with his will. The only question is whether the substituted punishment was authorized by law—here, whether the charge is within the scope of the words of the Constitution, article 2, § 2: 'The President * * * shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.' We cannot doubt that the power extends to this case. By common understanding imprisonment for life is a less penalty than death."

We may remark here that the words of the State Constitution, art. 6, § 10, Okla. St. Ann., that "The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law," are much broader than the words of the Federal Constitution as above quoted, art. 2, § 2.

A "commutation" is the change of punishment to a less severe one, or the substitution of a less for a greater penalty or punishment, and the commuted sentence has the same legal effect, and the status of the prisoner is the same.

It follows from the foregoing authorities and what has been said that the application is insufficient to show that the petitioner is entitled to have the writ issue, or a rule entered to show cause why the writ should not issue, the demurrer thereto is therefor sustained.

For the reasons stated, the writ of habeas corpus should be denied. It is so ordered.