**UNITED STATES of America**

v.

**Gerard RAVEN, Defendant.**

**Crim.A. No. 94–10355–NMG.**

United States District Court, D. Massachusetts.

June 20, 2000.

William F. Sinnott, Geoffrey E. Hobart, U.S. Attorney's Office, Boston, MA, for U.S.

Benjamin D. Entine, Barry O. Wilson, Boston, MA, for Gerard Raven.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On December 28, 1994, the defendant, Gerard Raven ("Raven"), and co-defendants Nicos Tsakalakis and Panagiotis Motsos were indicted on charges related to an attempt to import 50 kilograms of heroin into the United States from Belgium. On February 15, 1997 a superseding indictment was returned charging them with conspiracy to import heroin and attempt to import heroin, both in violation of 21 U.S.C. § 963, and distribution of heroin for purposes of unlawful importation in violation of 21 U.S.C. § 959(a).

Both Mr. Tsakalakis and Mr. Motsos have pled guilty and Raven is scheduled to go to trial on June 26, 2000. Raven has filed two pending motions, a motion to suppress statements made to Belgian and American law enforcement authorities (Docket No. 123) and a motion for relief from an alleged violation of the Vienna Convention on Consular Relations (Docket No. 133).

## I. Motion to Suppress Statements

Raven seeks by motion to suppress statements made to Belgian and American law enforcement representatives while he was in custody in Belgium. He argues that it is a violation of the right to counsel provided by the Fifth and Sixth Amendments to the United States Constitution to allow those statements to be admitted at his trial. Raven, who is a citizen of the Netherlands, argues that he had retained counsel to represent him in the Belgian case that was similar to this case and that such counsel was not present when Belgian and American law enforcement representatives questioned him in Belgium after his arrest under the United States indictment in May, 1995.

Raven is correct that, even as an alien, he would have been entitled to some constitutional protections if he had been in the United States at the time of the questioning. The Supreme Court has extended certain constitutional rights to foreign nationals when they reside or are being held in the United States. *See e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Wong Wing v. United States*, 163 U.S. 228, 236, 16 S.Ct. 977, 41 L.Ed. 140 (1896).

■ When the questioning takes place overseas, however, foreign nationals do not benefit from the protections of the United States Constitution. Although the Supreme Court has not specifically addressed the question of whether the Sixth Amendment applies extraterritorially, it has held that the protections of the Fourth and

Fifth Amendments do not apply to foreign nationals outside of the United States. *Johnson v. Eisentrager*, 339 U.S. 763, 784, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (Fifth Amendment not applicable to aliens outside of the United States); *United States v. Verdugo–Urquidez*, 494 U.S. 259, 269, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (Fourth Amendment not applicable to alien when search conducted by United States law enforcement agents in foreign country). This Court is persuaded that, having rejected the extraterritorial application of the Fourth and Fifth Amendments to aliens, the Supreme Court would do likewise if requested to enforce the Sixth Amendment under similar circumstances.

■ Moreover, the United States law enforcement representatives who questioned Raven in Belgium complied with all applicable laws of their host country. After receiving a Letter Rogatory issued by this Court, the Belgian government instructed the American law enforcement representatives that they could go forward with questioning Raven only without his counsel present. Further, those representatives obtained the approval of a Belgian Magistrate Judge before proceeding to question Raven without counsel present. Only after confirming that Belgian law does not allow a defendant's counsel to be present during questioning did the American law enforcement representatives proceed with the interview. This Court finds that comity compels such action and that Raven's statements to those representatives should not be suppressed.

## II. Motion for Relief for Violation of the Vienna Convention on Consular Relations

Raven has also filed a motion to rectify what he asserts is a violation of the Vienna Convention on Consular Relations. Raven argues specifically that: 1) he was not informed of his right to contact his consulate after his arrest in Belgium and 2) consular officials were not allowed to visit him while he was in custody. He seeks dismissal of the indictment or suppression of the statements he made.

The United States, the Netherlands and Belgium are all signatories to the Vienna Convention on Consular Relations. Article 36(b) of the Vienna Convention on Consular Relations provides that authorities, upon arresting a foreign national, shall inform the defendant of his right to contact his country's consular post. Article 36(c) provides that consular officers have the right to visit the foreign defendant in custody to converse and correspond with him and arrange for legal representation. Raven, a Dutch national, asserts that neither the Belgian nor the American authorities informed him of his right to contact the Dutch Consulate and that, as a consequence, the Dutch Consul was unable to provide him with assistance while he was in custody.

The government responds that Raven has not supported his motion with an affidavit describing his contact, or lack thereof, with any Dutch official. It asserts that, for that reason alone, no relief is appropriate. The government is correct that, in order to be entitled to any relief, Raven must submit evidence, as opposed to simply argument of counsel, indicating that the Dutch Consul was denied access to Raven while in custody or that he was not informed of his right to such contact.

Moreover, even if Raven were to submit evidence that he had no contact with Dutch authorities, as explained below, the government persuasively argues, in the alternative, that any failure to follow the Vienna Convention was rectified and, even if it was not, the remedy Raven seeks is unwarranted.

### A. *Vienna Convention Requirements*

■ Raven was arrested in Belgium on December 23, 1994. By a Letter Rogatory issued on February 20, 1995, a Judge of Instruction in Belgium notified the Dutch government that Belgian authorities had detained Raven. Any delay of the Belgian

authorities in not immediately informing the Dutch government of Raven's status was, therefore, rectified when it sent the Letter Rogatory to Dutch authorities.

■ With respect to Raven's argument about the failure of American authorities to notify 1) him of his rights or 2) the Dutch Consulate of Raven's status after extradition to the United States, the government asserts that no such notices were necessary. It contends that the Dutch Consulate already knew of Raven's status, Raven had the opportunity to meet with the Dutch Consul and any notification would have been superfluous. In support of its argument, the government cites the Department of State's official instruction regarding consular notification which states that

[i]f the foreign national has already established contact with his/her consular officials, [the Department does] not consider it necessary to remedy a failure to provide consular notification by going through the procedures.

The purpose of the Vienna Convention is to ensure that a foreign government can provide assistance to its nationals who have been arrested. *See* Article 36 of the Vienna Convention on Consular Relations. Records from the Plymouth County Correctional Facility where Raven was held after extradition to the United States indicate that the Dutch Consul has met with Raven on several occasions. The purpose of the Vienna Convention was satisfied by virtue of the occasions on which Raven was able to consult with the Dutch Consul.

## B. *The Remedy Sought by Raven*

■ Even if a violation of the Vienna Convention occurred, the government contends that neither suppression of statements made to law enforcement officers nor dismissal of the indictment is an appropriate remedy. Suppression, a less draconian remedy than dismissal, is appropriate for the violation of constitutional rights but not for the violation of statutory or administrative rights. The United States Court of Appeals for the Fourth Circuit has stated, in that regard, that

even if the Vienna Convention on Consular Relations could be said to create individual rights (as opposed to setting out the rights and obligations of signatory nations), it certainly does not create constitutional rights.

*Murphy v. Netherland,* 116 F.3d 97, 99–100 (4th Cir.1997). In the case at bar, it is clear that the alleged violation does not afford a level of constitutional protection.

If no constitutional rights are involved, suppression is inappropriate in the absence of statutory sanction. As one court has stated:

The Vienna Convention does not expressly or impliedly provide for the remedy of suppression of statements or confessions where an arresting government fails to notify a foreign national of [his] right to contact the Consulate.

*United States v. Tapia–Mendoza,* 41 F.Supp.2d 1250, 1255 (D.Utah 1999). *See also United States v. Chaparro–Alcantara,* 37 F.Supp.2d 1122, 1125–26 (C.D.Ill.1999) ("The Court, however, finds nothing in the Vienna Convention that provides for the exclusionary rule as a remedy for violation of its provisions."). Because suppression of statements is not provided for under the Vienna Convention, it is an inappropriate remedy for any violation asserted by Raven.

Finally, even if Raven could sustain his burden to this point, he would be unable to show actual prejudice as required.

To establish prejudice, the defendant must produce evidence that 1) he did not know of his right; 2) he would have availed himself of the right had he known of it; and 3) there was a likelihood that the contact would have resulted in assistance to him ...

*United States v. Villa–Fabela,* 882 F.2d 434, 440 (9th Cir.1989) (reversed on other grounds). Raven has met with the Dutch Consul several times and he has not shown

**42**

that further (or earlier) contact with him would have resulted in further assistance. Nor has Raven shown that, had he spoken with the Dutch Consul earlier or more often, he would have resisted an interview with Belgian and American authorities. Raven was given *Miranda* warnings before his interview with American law enforcement representatives, indicated that he understood his rights and decided to speak to them anyway. Ultimately, Raven has failed to prove any prejudice to himself from any failure to be informed of his rights under the Vienna Convention.

Because 1) suppression is an inappropriate remedy and 2) Raven has failed to show actual prejudice, his motion for relief for any alleged violation of Vienna Convention will be denied.

### ORDER

For the reasons set forth in the Memorandum above,

1) the motion of the defendant, Gerard Raven, to suppress statements (Docket No. 123) is DENIED; and

2) the motion of the defendant, Gerard Raven, for relief for violation of the Vienna Convention on Consular Relations (Docket No. 133) is DENIED.

So ordered.