754 A.2d 1224 (2000)
333 N.J. Super. 181
STATE of New Jersey, Plaintiff-Respondent,
v.
Carlos Alberto CEVALLOS-BERMEO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 2000.
Decided June 30, 2000.
*1225 Ivelisse Torres, Public Defender, for defendant-appellant (Mark Tabakman, Designated Counsel, on the brief).
John J. Farmer, Jr., Attorney General, for plaintiff-respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the brief).
Before Judges HAVEY, A. A. RODRÍGUEZ and COLLESTER.
The opinion of the court was delivered by RODRÍGUEZ, A. A., J.A.D.
Defendant, Carlos Alberto Cevallos-Bermeo, challenges his conviction for several crimes arguing that the Vienna Convention of Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 101 (Convention), a treaty among the United States, his native Ecuador and many other nations, has been violated by the prosecutor's failure to notify the Ecuadorean Consulate of his arrest, indictment and prosecution. We hold that whether the Convention confers an individual right on a foreign national or a national right on the signatory nations, absent a showing of prejudice to defendant, a criminal conviction will not be overturned because the terms of the Convention have not been observed.
This was a capital case. Following a jury trial, defendant was convicted of knowing and purposeful murder, N.J.S.A. 2C:11-3; first degree kidnapping, N.J.S.A. 2C:13-1b; first degree aggravated sexual assault, N.J.S.A. 2C:14-2a; and related charges. In the sentencing phase of the trial, the jury was unable to reach a unanimous verdict whether to impose the death penalty. The judge merged the related convictions and imposed the following sentence: on the murder conviction, a life term with a thirty-year period of parole ineligibility; on the kidnaping charge, a consecutive thirty-year term with a fifteenyear period of parole ineligibility; and on the aggravated assault conviction, a consecutive twenty-year term with a ten-year period of parole ineligibility. All of these sentences were to run consecutive to the terms imposed on another murder conviction. We affirm the conviction; however, we modify the sentence so that all of the terms imposed for this criminal episode run concurrent.

I
Defendant's convictions arose out of the kidnaping, rape and murder of A.T., in the early morning hours of September 13, 1994. The evidence presented by the State during the penalty phase can be briefly summarized as follows. On September 12, 1994, A.T. had a fight with her live-in boyfriend because of her excessive drinking. She took $350 cash from him and left with her six-year old daughter in a taxicab. She left the child at the home of a friend who was a frequent babysitter. A.T. then went to JD's Bar. Already intoxicated upon her arrival, A.T. met Alberto Ojeda at the bar. The two continued to drink and then went to the Mambo King Bar. Eventually, the Mambo King's owner called a taxicab for A.T. However, the *1226 driver refused to take her due to a previously unpaid fare. As a consequence, A.T. started to walk home. Ojeda went outside with her, but then went back inside the Mambo King.
Sometime later, Paula Martinez and Jose Reyes saw A.T. running by them on 58th Street and Palisades Avenue screaming "God help me." A.T. asked for directions and then walked towards Bergenline Avenue. Five minutes later, defendant came by and asked Reyes if he had seen a "chick" go by. Reyes said no. Defendant continued walking in the direction of Bergenline Avenue. Shortly thereafter, Martinez saw defendant dragging A.T. from the street into Modell's parking lot on 58th Street.
At around 6:00 a.m. on September 13, 1994, A.T.'s lifeless body was found lying on her back, between parked cars in Modell's parking lot. She had numerous lacerations and was bleeding from the neck. Her pants were by her feet, and her shirt pulled up around her neck. She was not wearing any undergarments. Her sneakers were under a vehicle parked next to her. Blood was spattered on the vehicles next to the body. There was a hand impression on her right thigh. Four latent hand prints were taken from the windows of the adjoining vehicles. The medical examiner concluded that A.T. died from a combination of multiple sharp and bluntforce injuries and asphyxia by compression of the neck. Her blood alcohol level was.336.
The day after the murder, defendant purchased an airline ticket to his native Ecuador. He left the following day. Four months later, he returned to the United States. In March 1995, defendant was arrested for another murder. As a result, his photograph was published. Martinez identified defendant from the photograph as the man who had dragged A.T. into Modell's parking lot. Defendant was fingerprinted. His fingerprints matched those taken from one of the cars parked next to where A.T.'s body was found.
Defendant did not testify. In his defense, he presented testimony from his wife regarding his return to Ecuador. He also presented testimony of other witnesses regarding the lighting conditions in Modell's parking lot and the distance to Martinez's apartment.

II
On appeal, defendant contends that the State's failure to comply with the Convention mandates the reversal of the conviction or, in the alternative, a new trial. We disagree. After the trial, defendant filed a letter claiming that his rights under the Convention had been violated. The United States and Ecuador are signatories to Article 36 of the Convention, which states in pertinent part:
if he [a foreign detainee] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.
The section mandates that "authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Additionally,
consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment.
Defendant argues that the Convention created individual rights analogous to Miranda[1] rights and that violation of those rights requires a reversal of his conviction. The State does not contest the applicability of the Convention or deny that defendant was not apprized of his rights under it. However, the State contends that the *1227 rights conveyed by the Convention can be enforced only by the offended country, not by an individual. After holding a hearing, the judge determined that, although there was no compliance with the Convention, the rights conferred upon Ecuador through the Convention were "not justiciable" by defendant as an individual. The judge also found that defendant suffered no actual prejudice due to the violation of the Convention.
Whether or not the Convention confers individual rights has not been addressed by any New Jersey court. Other courts are divided on the issue. Compare United States v. Tapia-Mendoza, 41 F.Supp.2d 1250, 1253 (D.Utah.1999) (holding that "it is doubtful that such a private right exists"), and Kasi v. Virginia, 256 Va. 407, 508 S.E.2d 57, 64 (Va.1998) (holding that provisions of Convention create no legally enforceable individual right), cert. denied, ___ U.S.___, 119 S.Ct. 2399, 144 L.Ed.2d 798, 67 U.S.L.W. 3717, 3778, 3784 (1999), with United States v. Lombera-Camorlinga, 170 F.3d 1241, 1243 (9th Cir. 1999) (holding that Article 36(1)(b) establishes an individual right). However, all courts confronting the issue have required that a defendant show actual prejudice as a prerequisite for relief. See Lombera-Camorlinga, supra, 170 F.3d at 1244 (holding that the defendant in a proceeding has the initial burden of producing evidence showing prejudice from the violation of the Convention); Tapia-Mendoza, supra, 41 F.Supp.2d at 1253 (imposing a "requirement that actual prejudice resulting from the alleged violation must be shown before obtaining a remedy"); United States v. Esparza-Ponce, 7 F.Supp.2d 1084, 1097 (S.D.Cal.1998) (holding that "to have his statements suppressed, defendant must show prejudice"). See, e.g., Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir. 1997); Faulder v. Johnson, 81 F.3d 515, 520 (5th Cir.), cert. denied, 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996); United States v. Alvarado-Torres, 45 F.Supp.2d 986, 989-90 (S.D.Cal.1999).
The Supreme Court of the United States has touched on the provisions of the Convention, but has not resolved the split between other courts on the standing issue. In Breard v. Greene, 523 U.S. 371, 373,118 S.Ct. 1352, 1353-54, 140 L.Ed.2d 529, 536 (1998), the defendant, a Paraguayan national, brought a habeas corpus petition alleging that state officials had violated the Convention by failing to notify the Paraguayan consulate of his arrest for rape and capital murder. The Supreme Court recognized that the Convention "arguably confers on an individual the right to consular assistance following arrest" but also noted that in 1996, prior to defendant's filing his claim, Congress had enacted the Antiterrorism and Effective Death Penalty Act, 28 U.S.C.A. § 2254(a), (e)(2) (Supp. 1999), which provided that a habeas petitioner alleging that he is held in violation of treaties of the United States will not be afforded an evidentiary hearing if defendant failed to develop the factual basis of his claim in the state court proceeding. Id. at 376, 118 S.Ct. at 1355, 140 L.Ed.2d at 538. Because defendant failed to make such a showing, his claim was barred. Id. at 377, 118 S.Ct. at 1355, 140 L.Ed.2d at 538. The Supreme Court observed that even if defendant's Convention claim were properly raised and proven, "it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial." Ibid.
Despite the split among jurisdictions on whether the Convention confers individuals standing to assert a violation, all courts, including the Supreme Court of the United States, agree that a judgment will not be overturned absent a showing of prejudice. We, therefore, decline to decide the issue of standing and proceed to analyze whether defendant has established prejudice flowing from the State's failure to comply with the Convention.
The Ninth Circuit, in United States v. Villa-Fabela, 882 F.2d 434 (9th Cir. 1989), overruled on other grounds, United *1228 States v. Proa-Tovar, 975 F.2d 592 (9th Cir.1992), set forth a three-prong test concerning the sufficiency of a defendant's evidence of prejudice. To establish prejudice, defendant must produce evidence that: 1) he did not know his right; 2) he would have availed himself of the right had he known of it; and 3) there was a likelihood that contact with the consul would have resulted in assistance to him. Id. at 440.
Here, defendant has satisfied the first prong of this test: he did not know of his right to contact the consulate. The only evidence that he would have contacted the consulate, had he known of his right, is his own statement that he would have done so. Even assuming that the first two prongs are satisfied, defendant must satisfy prong three. Defendant asserts general claims of prejudice ("the consular officer can identify potential problems and obstacles the national may face in an unfamiliar and strange legal system," bridge "cultural gaps" and "facilitate an active defense"). He also claims that the consul
would likely have communicated directly with the Hudson County Prosecutor's Office immediately to ascertain the status of defendant's case and the options that the Prosecutor was considering. The consul could have opened a dialogue with that Office, which would have resulted in the consul presenting whatever facts and legal argument it could muster on defendant's behalf.
These claimed prejudices are vague and general, and could apply to any foreign national who was not advised of his right to contact the consul. Moreover, contrary to defendant's insinuation, the consul cannot render legal advice. Alvarado-Torres, supra, 45 F.Supp.2d at 992. Accordingly, we conclude that defendant has failed to establish any remediable prejudice due to the State's failure to comply with the Convention.
[Section III of this opinion involving a sentencing issue has been redacted for publication purposes.]

IV
The remaining contentions on appeal are as follows:
THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE THE RESULTS OF THE IDENTIFICATION OF DEFENDANT.
THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO ADMIT SIGNIFICANT EVIDENCE OF THIRD PARTY GUILT.
THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION FOR A TRIFURCATED TRIAL. THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE DEFENDANT IS ENTITLED TO A NEW TRIAL (Not Raised Below). THE ERRORS COMMITTED, IN THEIR ENTIRETY, DENIED DEFENDANT A FAIR TRIAL. THE SENTENCE IMPOSED WAS UNJUST, INAPPROPRIATE AND MANIFESTLY EXCESSIVE.
These contentions are without merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(2).
The convictions are affirmed, the sentence is modified, and the matter is remanded for entry of an amended judgment.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).