2005 OK CR 17

**Osbaldo TORRES, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. PCD–2004–442.**

Court of Criminal Appeals of Oklahoma.

Sept. 6, 2005.

## OPINION DENYING POST–CONVICTION RELIEF

CHAPEL, Presiding Judge.

¶ 1 Osbaldo Torres was tried by jury, convicted of two counts of first degree murder and other charges, and received two sentences of death in Oklahoma County District Court, Case No. CF–1993–4302. This Court affirmed Torres's convictions for murder, and the United States Supreme Court denied Torres's Petition for Certiorari.[1] This Court denied Torres's first Application for Post–Conviction Relief on August 4, 1998.[2] Torres's application for federal habeas relief was

1. *Torres v. State*, 1998 OK CR 40, 962 P.2d 3, *cert. denied*, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999).

2. *Torres v. State*, Case No. PCD–1998–213 (Okl. Cr. August 4, 1998) (Order not for publication).

denied.[3] This Court subsequently denied Torres's second Application for Post–Conviction Relief.[4] On April 29, 2004, Torres filed a Subsequent Application for Post–Conviction Relief. The State filed a Response on May 11, 2004. Briefs were also filed on behalf of *amici curiae* the Government of the Republic of Mexico and international law experts and former diplomats. On May 13, 2004, this Court remanded the case for an evidentiary hearing. The hearing was held on November 29, 2004. The trial court submitted findings of fact and conclusions of law, and both parties filed briefs in response to those findings and conclusions.

¶ 2 While his application for post-conviction relief was pending before this Court, Torres also pursued clemency proceedings. On May 13, 2004, the same day as this Court's Order remanding for an evidentiary hearing, Governor Brad Henry granted Torres clemency and commuted Torres's death sentences to life without the possibility of parole.[5] All issues relating to Torres's sentences of death are thus rendered moot.

¶ 3 We remanded for an evidentiary hearing on two issues: (a) whether Torres was prejudiced by the State's violation of his Vienna Convention rights in failing to inform Torres, after he was detained, that he had the right to contact the Mexican consulate; and (b) ineffective assistance of counsel. This Court commends Judge Twyla Mason Gray and counsel on a thorough, well-conducted hearing. Briefly summarized, Judge Gray found that Torres was prejudiced by the violation of his Vienna Convention rights. She did not specifically find Torres's counsel was ineffective, noting that standards for capital counsel may have changed since the time of Torres's trial. For the reasons discussed below, we agree with Judge Gray's findings but find no relief is required.

¶ 4 In finding that Torres was prejudiced by the violation of his Vienna Convention rights, the trial court used the following three-prong test: (1) whether the defendant did not know he had a right to contact his consulate for assistance; (2) whether he would have availed himself of the right had he known of it; and (3) whether it was likely that the consulate would have assisted the defendant. This test, which has been used by several jurisdictions, was suggested in the specially concurring opinion to this Court's Order remanding the case for an evidentiary hearing.[6] Under this test, prejudice is presumed if all three factors are present. This Court did not formally adopt this test when remanding the case. We adopt it now. In doing so, we describe the evidence required for proof under the third prong of the test. The defendant must present evidence showing what efforts his consulate would have made to assist in his criminal case. The majority of jurisdictions considering the Vienna Convention question have adopted some version of this test.[7] The common thread in

3. *Torres v. Mullin,* 317 F.3d 1145 (10th Cir. 2003), *cert. denied,* 540 U.S. 1035, 124 S.Ct. 562, 157 L.Ed.2d 454.

4. *Torres v. State,* 2002 OK CR 35, 58 P.3d 214, *cert. denied,* 538 U.S. 928, 123 S.Ct. 1580, 155 L.Ed.2d 323 (2003).

5. Okla. Const. art. VI, § 10; 57 O.S.2001, § 332.

6. *Torres v. State,* No.2004–442 (Okl.Cr. May 13, 2004) (not for publication)(Chapel, J., specially concurring). *See also People v. Preciado–Flores,* 66 P.3d 155, 161 (Colo.App.2002); *State v. Lopez,* 633 N.W.2d 774, 783 (Iowa 2001); *Zavala v. State,* 739 N.E.2d 135, 142 (Ind.App.2000); *State v. Cevallos–Bermeo,* 333 N.J.Super. 181, 754 A.2d 1224, 1227 (A.D.2000); *U.S. v. Chaparro–Alcantara,* 37 F.Supp.2d 1122, 1126 (C.D.Ill.1999); *U.S. v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1097 (S.D.Cal.1998); *U.S. v. Villa–Fabela,* 882 F.2d 434, 440 (9th Cir.1989), *overruled on other grounds, U.S. v. Proa–Tovar,* 975 F.2d 592 (9th Cir.1992). The test was articulated in *U.S. v. Rangel–Gonzales,* 617 F.2d 529, 533 (9th Cir. 1980). Finding that the defendant had shown he was prejudiced by deportation proceedings which included a Vienna Convention violation, the Court found defendant had met "his initial burden of going forward with evidence that he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him in resisting deportation."

7. *See, e.g., State v. Byron* 683 N.W.2d 317, 323–24 (Minn.App.2004); *Hernandez v. U.S.,* 280 F.Supp.2d 118, 124–25 (S.D.N.Y.2003); *Preciado–Flores,* 66 P.3d at 161; *Cevallos–Bermeo,* 754 A.2d at 1228; *U.S. v. Briscoe,* 69 F.Supp.2d 738, 747 (D.Virgin Islands 1999); *Murphy v. Netherland,* 116 F.3d 97, 100–01 (4th Cir.1997); *Lopez,*

each is a threshold requirement that a defendant make some showing of how his consulate would have aided him.[8]

¶ 5 We reject any construction of the third prong of the test which would require a defendant to show that the consular assistance would, or could, have made a difference in the outcome of the criminal trial. Appellate review in the criminal justice system necessarily involves balancing uncertainties. In each criminal trial, a factfinder determines guilt or innocence beyond a reasonable doubt. In most trials there may be some doubt, and some questions may remain unanswered. Very rarely, a conviction may later be shown to be wrongful by subsequent evidence of actual innocence such as DNA testing or a confession by a third party. Also very rarely, an evidentiary or legal error may so obviously inflame a jury's passions as to render its sentencing determination unreliable as a matter of law. More usually, a defendant will present evidence of factual or legal errors which may or may not have affected a jury's decision and which thus cannot be shown to have affected a verdict or sentence.

¶ 6 The essence of a Vienna Convention claim is that a foreign citizen, haled before an unfamiliar jurisdiction and accused of a crime, is entitled to seek the assistance of his government. Even if that assistance cannot, ultimately, affect the outcome of the proceedings, it is a right and privilege of national citizenship and international law. The issue is not whether a government can actually affect the outcome of a citizen's case, but whether under the Convention a citizen has the opportunity to seek and receive his government's help. This protection extends to every signatory of the Convention, including American citizens. It is often impossible to say whether a particular action in a criminal trial could affect the outcome. However, it is possible to show what particular assistance, if any, a government would offer its citizen defending against a crime in a foreign country. That is the right and privilege safeguarded by the Convention. This Court is unwilling to raise the bar beyond that which the Convention guarantees. If a defendant shows that he did not know he could have contacted his consulate, would have done so, and the consulate would have taken specific actions to assist in his criminal case, he will have shown he was prejudiced by the violation of his Vienna Convention rights.

¶ 7 This test for prejudice from a violation of Vienna Convention rights is consistent with the direction of the International Court of Justice decision, *Case Concerning Avena and Other Mexican Nationals (Mexico v. United States of America )* [*Avena* ].[9] *Avena* noted that the remedy directed in that case, the judicial review we here undertake, should be done "with a view to ascertaining whether in each case the violation of Article 36 com-

633 N.W.2d at 783; *Esparza–Ponce,* 7 F.Supp.2d at 1097. *See also Darling v. State,* 808 So.2d 145, 166 (Fla.2002). In *U.S. v. Lombera–Camorlinga,* 170 F.3d 1241 (9th Cir.1999), the Ninth Circuit held a defendant has the initial burden to show prejudice resulting from a Vienna Convention violation. After that case was remanded for that determination, the opinion was withdrawn and the case was resolved on rehearing by *U.S. v. Lombera–Camorlinga,* 206 F.3d 882 (9th Cir.), *cert. denied,* 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 455 (2000), which determined suppression was not an appropriate remedy whether or not prejudice was shown. Several of these cases adopt or imply a requirement that a defendant show he was actually prejudiced—that is, that the outcome of the case could or would have been different—as a result of the Convention violation. As we explain *infra,* we reject this construction.

8. Many cases discuss the appropriate remedy for Vienna Convention violations in the context of

motions to suppress evidence or dismiss an indictment where a defendant's Vienna Convention rights were violated. Courts discussing this issue have concluded that the Vienna Convention is equivalent to a statute rather than a constitutional provision, and that neither the treaty itself nor any statute authorize these remedies. Given this result, the courts either fail to reach the question of prejudice or treat it as dicta. *See, e.g., U.S. v. Duarte–Acero,* 296 F.3d 1277 (11th Cir.2002); *People v. Preciado–Flores,* 66 P.3d 155 (Colo. 2002); *U.S. v. Jimenez–Nava,* 243 F.3d 192 (5th Cir.2001); *U.S. v. Page,* 232 F.3d 536 (6th Cir. 2000); *U.S. v. Lawal,* 231 F.3d 1045 (7th Cir. 2000), *cert. denied,* 531 U.S. 1182, 121 S.Ct. 1165, 148 L.Ed.2d 1024 (2001); *U.S. v. Lombera–Camorlinga,* 206 F.3d 882 (9th Cir.2000); *U.S. v. Li,* 206 F.3d 56 (1st Cir.2000); *U.S. v. Raven,* 103 F.Supp.2d 38 (D.Mass.2000); *U.S. v. Alvarado–Torres,* 45 F.Supp.2d 986 (S.D.Cal.1999), *aff'd,* 230 F.3d 1368 (9th Cir.2000).

9. 2004 I.C.J. 128 (Judgment of March 31, 2004).

mitted by the competent authorities caused actual prejudice to the defendant in the process of administration of criminal justice."[10] The phrase "actual prejudice" can refer only to prejudice flowing from the violation of the purpose of the Convention provision. That purpose is to ensure that a foreign citizen has the opportunity for aid from his or her government in an unfamiliar criminal jurisdiction. Whether or not the aid results in a different case outcome, a citizen must be actually prejudiced when he is denied aid his government would have provided.

 ¶ 8 Reviewing the evidence presented in the evidentiary hearing, as well as the evidence submitted to this Court, we find that, under the unusual circumstances of this case, with regard to his convictions for first degree murder, Torres has not shown he was actually prejudiced by the State's failure to inform him of his rights under the Vienna Convention. Torres has provided ample evidence that the Mexican government takes its consular obligations to its citizens very seriously, particularly when those citizens are capital defendants in another country. The Mexican government has a tradition of active assistance extending back to the 1920s, and provided extensive assistance to capital defendants in 1993, the year of Torres's arrest. Had the consulate been contacted, it would have monitored Torres's case, consulted with and offered assistance to his attorney, and helped gather evidence, particularly in preparation for the second stage of trial. "[T]he protection of Mexican nationals who face capital proceedings or capital trials is one of the highest priority of the Mexican Consular representatives. All their efforts are focused on trying to avoid the imposition of the death penalty."[11] Among consular officials' most important duties are the gathering of mitigation evidence and locating mitigating witnesses in Mexico and the United States. After belatedly entering into Torres's case, Mexico hired two bilingual investigators, two gang experts, a mitigation expert and a neuropsychiatrist, to assist in developing miti-

gating evidence for the appellate process. All the evidence presented supports the conclusion that consular assistance, in Torres's particular circumstances, would have focused on obtaining a sentence of less than death. Evidence did not specifically show how consular assistance would have assisted in the guilt phase of the trial.

¶ 9 Torres clearly showed that the Mexican government would have expended considerable resources on the capital phase of his case. If Torres were still under a capital sentence, this would indeed amount to a showing of prejudice. However, the Governor's grant of clemency in Torres's case ensures that Torres is not subject to the death penalty. Any assistance Mexico could have given in this regard has become moot. Torres did not present evidence showing he was prejudiced in the guilt/innocence stage of trial by the Vienna Convention violation. Under these circumstances, Torres is not entitled to relief from his convictions, and has already received relief from his capital sentences. No further relief is required.

 ¶ 10 We also asked the district court to determine whether trial counsel was ineffective. Mary Bane, an experienced capital criminal defense attorney, testified that, in her opinion, trial counsel was ineffective for failing to use a gunshot residue expert, and have the bloodstain evidence tested, to support Torres's claim that his co-defendant shot the victims.[12] However, under Oklahoma law, Torres would be liable for murder even if his co-defendant shot the victims, because the two were acting together. We thus cannot find that counsel's failure to retain a gunshot residue expert and test the blood evidence would have affected the jury's verdict of guilt. That information might have affected the jury's decision to sentence Torres to death. However, as Torres no longer faces the death penalty, that possibility no longer exists. We find that, given the grant of clemency, Torres was not prejudiced by counsel's failure.

**10.** *Avena,* 2004 I.C.J. 128 at ¶ 121.

**11.** Testimony of Victor Vribe, Director for Foreign Litigation as the Mexican Minister of Foreign Relations. Tr. 48.

**12.** We note the State also argued that Torres's co-defendant shot the victims.

¶ 11 Bane also compared counsel's performance with the standards currently expected of counsel in capital cases. Bane testified that counsel was ineffective for failing to hire an expert on eyewitness identification, to counter the testimony identifying Torres, and for failing to insist that counsel or a representative be present when the State conducted measurements at the scene of the crime. Bane also indicated that counsel should have hired a second chair counsel and an investigator. Bane faulted counsel for waiting until just prior to trial to ask to sever Torres's case from his co-defendant's. She criticized counsel's apparent lack of focus during the proceedings, as shown by erratic lines of questioning and closing argument sections. Bane testified that counsel should have, at the least, objected to some instructions given, and preferably should have submitted instructions herself. On cross-examination, Bane seemed to agree with the prosecutor that many of her criticisms ultimately went to counsel's failure to take actions which, had they been taken, might have resulted in a sentence other than death. Insofar as this was the case, any deficiencies in representation have been remedied by the Governor's grant of clemency.

¶ 12 Torres correctly notes that customs of practice for capital defense attorneys have evolved since his trial. During testimony and argument, Torres relied on the American Bar Association guidelines for minimum standards of counsel in capital cases, arguing that trial counsel's performance as described above failed to meet those standards.[13] As early as 1984, the United States Supreme Court recognized the ABA Standards for Criminal Justice for defense counsel, noting that these are only guidelines and declining

to adopt them as a set of formal rules of representation.[14] We also recognize the utility of guidelines for effective capital counsel. However, we will not find that capital counsel was *per se* ineffective simply because counsel's representation differed from current capital practice customs, even where the differences are significant. A defendant must still show that he was prejudiced by counsel's representation.[15] Torres has not made this showing. Several witnesses testified that, based on objective review and comparison with similar cases and current practice, they felt counsel's actions were inadequate. This alone does not show prejudice. Each witness stated counsel should have taken the steps described by Ms. Bane in order to be effective. However, no witness presented any evidence suggesting that these or any other particular steps by trial counsel would have affected the trial's outcome. We cannot find trial counsel ineffective on this record.[16] We also find that, insofar as his convictions for first degree murder are concerned, trial counsel was not ineffective for failing to raise the Vienna Convention violation, based on our discussion above, as Torres has not shown prejudice from that failure.

¶ 13 After a thorough evidentiary hearing, the trial court found that Torres had been prejudiced by the violation of his Vienna Convention rights, and declined to find whether trial counsel had been ineffective. Upon review, this Court concludes, first, that Torres suffered actual prejudice regarding his Vienna Convention claim only in the context of his capital sentence. The record shows that the Mexican government would have, and subsequently has, offered Torres assistance in finding and presenting mitigating evidence in order to avoid the imposition

**13.** *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases,* § 4.1(A)(1)(Rev.Ed.2003).

**14.** *Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

**15.** *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389 (2000); *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In *Valdez v. State,* 2002 OK CR 20, 46 P.3d 703, 710, we

found trial counsel was ineffective because counsel's failure to inform Valdez of his Vienna Convention rights resulted in prejudice to the defendant, without which a jury reasonably might have imposed a sentence other than death.

**16.** Torres raised claims of ineffective assistance on direct appeal and post-conviction, which were denied. Rather than apply procedural bar to the claim raised in Torres's Subsequent Application, we remanded the issue for an evidentiary hearing in the context of the issues raised by *Avena.*

of the death penalty. Second, we find that, while evidence does not show trial counsel's acts or omissions would have affected the jury's determination of guilt, trial counsel's performance might have affected the jury's decision to impose death. However, Torres no longer faces a sentence of death. The Oklahoma Constitution and statutes vest in the Governor the power to both commute and impose restrictions on sentences after criminal conviction.[17] The Governor exercised that power in this case. By Executive Order he granted clemency with the condition that Torres shall not be eligible to be considered for parole for the remainder of his life.[18] A commuted sentence has the same legal effect as though the sentence had originally been for the commuted term.[19] We find that Torres is not entitled to relief from his convictions for murder either as a result of Vienna Convention violations or through counsel's actions. We find that Torres was actually prejudiced by the failure to inform him of his rights under the Vienna Convention, and by counsel's acts or omissions which might have affected his sentencing. However, the Executive Branch grant of clemency and limitation of Torres's sentence to life without the possibility of parole renders these issues moot. Consequently, no relief is required. Torres's application for post-conviction relief is denied.

### DECISION

¶ 14 Torres's application for post-conviction relief is **DENIED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.(2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

17. Okla. Const. art. VI, § 10; 57 O.S.2001, § 332.

18. Executive Order 2004–17, May 13, 2004. The record before us clearly indicates that Torres received two separate death sentences for two separate counts of first degree murder. The Executive Order refers to a single death sentence. However, the record is also clear that the Pardon and Parole Board submitted recommendations for clemency as to both sentences, and the intent of the commutation was to commute both of Torres's death sentences. Moreover, in any

C. JOHNSON and A. JOHNSON, JJ.: concur.

LUMPKIN, V.P.J.: concur in part/dissent in part.

LUMPKIN, V.P.J.: concur in part/dissent in part.

¶ 1 I concur in the results reached by the Court in this case, and adopt much of the analysis I shared in the unpublished order granting an evidentiary hearing in this matter.

¶ 2 However, I disagree with this Court's assertion that the trial judge found Appellant was "prejudiced" as a result of the failure to adequately inform him of his rights under the Vienna Convention. What appears from a reading of the findings by the trial judge is the judge made a finding "as a matter of policy", not "actual fact" that Appellant was prejudiced. The trial judge stated:

> This Court cannot say with certainty that Appellant suffered actual prejudice because he was not informed of his rights under the Vienna Convention. However, this Court does not support a result that could lead some in the international community to believe the United States does not take seriously its obligations under the Convention. *See U.S. v. Carrillo*, 70 F.Supp. 2nd 854. Further, this Court believes that a ruling that Appellant was not prejudiced would allow officials of foreign signatories to ignore these same provisions when American citizens are detained abroad. Therefore, this Court finds that the Appellant was prejudiced because he was not adequately informed of his rights under the Vienna Convention. (Findings of Fact at Page 7)

event, as our opinion indicates, Torres was actually prejudiced in the sentencing proceedings by virtue of the State's failure to provide him notice under the Vienna Convention. Had the Governor not granted clemency, this Court would have been required to grant relief on that claim.

19. Okla. Const. art. VI, § 10; *Hemphill v. State*, 1998 OK CR 7, 954 P.2d 148, 151; *Ex Parte Denton*, 69 Okla.Crim. 204, 101 P.2d 276, 278 (1940); *Ex Parte Warren*, 39 Okla.Crim. 348, 265 P. 656, 657 (1928).

This finding, on its face, acknowledges it is in direct contradiction to the facts of the case. Thus, it becomes not a legal finding based on the law and evidence, but a political or policy decision, which should not be made by courts. While I appreciate the challenges presented to the trial judge in this matter, I believe it reveals that even excellent, experienced jurists can be drawn down the wrong path by public policy arguments.

¶ 3 I also disagree with this Court creating a "presumption of prejudice" standard to apply in this case. That presumption is not supported by the law or evidence presented in this record either as to the notification of consular rights or the issue of effective assistance of counsel. What the Court disregards in applying its "presumption" is the fact that Appellant is a Mexican national in form, not substance, due to the fact he has lived in the United States since he was 4 or 5 years old. (Evidentiary Hearing Order, Pg. 6) His contacts with Mexico have been minimal. There was nothing the Mexican government could provide as to evidence regarding his time in Mexico due to the fact he resided there for such a short period during his infancy. However, they could and have provided him resources, which is commendable. The mere failure to give notice of consular rights under this fact situation cannot in any manner be deemed to have been prejudicial, much less presumed prejudice.

¶ 4 We should not attach some *carte blanche* presumption of prejudice due to mere failure to advise of consular rights. Those rights are important and should be given in each instance. But, if there is a failure to advise, that failure must be judged under the totality of the circumstances and the actual impact it had upon a defendant to receive due process, effective assistance of counsel and resources needed for his/her defense. There is a valid reason for the requirement of advice of consular rights in the world today, but the failure to provide that notice must be evaluated in relation to the

guarantees afforded to each person charged with a crime in this great country. Our constitution provides to the lowest of persons the guarantees not even possessed by the affluent in most countries. The methods of providing those constitutional benefits are evolving and improving on a continuing basis. The appellant in this case was never without the assistance of counsel, and there are some filings in this record that indicate his retained trial counsel actually had contact with Mexican officials prior to his trial. Regardless, Appellant's rights were protected and he was provided resources to mount his defense and seek his appeals at each stage of the proceedings. We should not deal in presumptions when we can adjudicate realities, and that should be our standard of review. If a defendant has been prejudiced he/she will be able to present evidence to support that allegation and this court can adjudicate the issue on the facts. I find the presumption of prejudice due to the failure to advise of consular rights totally unwarranted and in conflict with an understanding of our criminal justice system. In support of these conclusions, I reiterate portions of my previous writings in this case.

¶ 5 review of the history of this case reveals the issue of ineffective assistance of counsel was raised and adjudicated in Appellant's direct appeal and that issue is now barred by res judicata. *See Torres v. State,* 1998 OK CR 40, 962 P.2d 3.[1] Appellant did not raise the issue of notification of consular rights in any of his subsequent appeals.[2] As a result, consideration of the legal issue is now barred by res judicata and waiver. Further, I have reviewed the briefs and materials presented and do not find any of the proffered evidence brings into question the guilt of Appellant. His guilt as an aider and abettor was proven beyond a reasonable doubt. *See Conover v. State,* 1997 OK CR 6, ¶¶ 18–21, 933 P.2d 904, 914–16.

¶ 6 As with any case that has been pending for over ten years, hindsight is 20/20 and

---

1. The original Application for Post–Conviction Relief, PC–1998–213, also sought to raise the issue of ineffective assistance of trial counsel. That application was denied in an unpublished opinion and not appealed.

2. The Second Application for Post–Conviction relief, *Torres v. State,* 2002 OK Cr 35, 58 P.3d 214; and a certiorari appeal, *Torres v. Oklahoma,* 538 U.S. 928, 123 S.Ct. 1580, 155 L.Ed.2d 323 (2003).

someone will look back and say something else could or should have been done. However, that is exactly what the U.S. Supreme Court told us not to do. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. As was pointed out in the original opinion, the first trial ended in a mistrial in 1995. There were no surprises during the second trial. My reading of the materials submitted with this subsequent application for post-conviction relief reflects those items dealt with mitigation evidence. And, while mitigation evidence was presented during the trial leading to the verdict in this case, the proffered items reveal only that more of the same type could have been presented, albeit, in more depth and by different witnesses with better credentials. In reality, that could be said of every case of this type we review. Therefore, as I previously stated, there was no basis in fact to require a further evidentiary hearing.

¶ 7 I also adhere to my previous finding that *Avena and other Mexican Nationals (Mexico v. United States),* 2004 I.C.J. 128 (March 31, 2004) is not binding on this Court.[3] The legal basis for this claim has been available since Appellant's arrest in 1993. The *Avena* decision cannot revive a stale claim. At most *Avena* directed us to review the case to ensure Appellant received the benefit of the process that was due him, and which would have been assured him if he had been advised of his consular rights. Appellant has been afforded his rights under *Avena.* He has been represented by competent lawyers at each stage of these proceedings and afforded all the rights guaranteed to citizens of the United States. That is reflected in the volumes of trial and appellate records amassed over the last eleven years.

¶ 8 Appellant's submissions constituted possible additional mitigation evidence. He has now had the opportunity to present that evidence to the Pardon and Parole Board, and ultimately to the Governor, and to this Court and the trial court in the remanded evidentiary hearing. As I reviewed the proffered documents and evidence I could not find any matters that brought into question the validity of the judgment and sentence in this case. His ability to present these additional matters through the executive clemency process and now the evidentiary hearing is another example of the due process that has been afforded to him. As a matter of law I do not find the subsequent application meets the requirements of 22 O.S.2001, § 1089.1(8)(9) and should be denied.

¶ 9 What has been exhibited and proven in this case is the United States of America continues to have the premier legal system in the world today. While many countries on this globe require the mandate of the notice of consular rights, and that is why we ascribe to and enforce them, to ensure the rights of persons charged with crimes are protected, those rights are automatically afforded to all persons pursuant to our constitution. Our concept of a "Nation of laws and not of men" works to secure and protect all who are charged with crimes without the need of an outside impetus. Granted, to ensure the proper example is presented to all who observe our system, we need to adhere to even the *pro forma* requirements of international agreements such as the Vienna Convention. However, we should never let form rule over substance as it is the assurance of due process, not the facade of it, that ensures the rights of the individual. In this case, substance prevailed over form and the Appellant received all the process that was due to him

---

3. Additionally, I note the State raised a very interesting point of fact in 4 of their Response Brief filed in this case prior to the evidentiary hearing. In that the State pointed out that Mexico has made conflicting admissions of when they learned of Appellant, i.e. December 1997 and March 1996. But more pointedly, the State said:

> In addition, trial counsel for Mr. Torres has advised undersigned that she contacted Mexico and informed them of Mr. Torres' case prior to his trial. The undersigned has been unable to obtain an affidavit from trial counsel and has

filed a motion asking this Court to compel counsel to prepare an affidavit. This motion has not been ruled upon by this Court.

As I stated previously, if this Court were to take any action, it should only have been to afford the State the opportunity to file an affidavit of trial counsel. If the affidavit comported with the proffer of the then the entire issue was moot. In reviewing the record of the evidentiary hearing, I did not find this assertion to have been contested. Consular rights were afforded. Mexico was given notice.

pursuant to the guarantees of the Constitutions of the United States of America and the State of Oklahoma. In addition to those guarantees, he was blessed with the additional mercy of the Governor of the State of Oklahoma.