In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1104

United States of America,

Plaintiff-Appellee,

v.

Noah Lawal,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 CR 651--Joan B. Gottschall, Judge.

Argued June 6, 2000--Decided November 1, 2000

Before Bauer, Manion, and Williams, Circuit
Judges.

Bauer, Circuit Judge.  Noah Lawal, a
Nigerian citizen who had been in the
United States for ten months/1 prior to
his arrest, was indicted for conspiracy
to possess with intent to distribute
heroin in violation of 21 U.S.C. sec. 846
and attempting to possess heroin with the
intent to distribute it in violation of
18 U.S.C. sec. 841(a)(1). Lawal moved
tosuppress several self-incriminating
statements he made to authorities after
his arrest, but the district court denied
the motion without an evidentiary
hearing. A jury later convicted Lawal on
both counts and the district judge
sentenced him to 78 months in prison.
Lawal appeals the district court's denial
of his motion to suppress. We affirm.

Background

   The facts of this heroin smuggling
operation begin in Nairobi, Kenya where
Pamela Matagaro obtained heroin from
James Bukana and agreed to transport it
to the United States. Matagaro boarded an
airplane in Nairobi and flew to Boston,

Massachusetts. Although Matagaro usually wears women's size seven shoes, this day she donned a roomy pair of men's size nine. Her unusually large shoes concealed some 800 grams of heroin.

When Matagaro deplaned in Boston, agents from the United States Customs Service arrested her and seized the heroin-laden shoes. Following her arrest, Matagaro agreed to cooperate with law enforcement. Matagaro told officials that Bukana had instructed her to fly from Boston to Chicago, Illinois, check into a hotel, and notify him of her arrival. According to the plan, Bukana was then to contact someone named "Moses" who would pick up the heroin from Matagaro. Federal agents accompanied Matagaro to Chicago where she checked into a hotel. The agents set up telephonic recording equipment in the room and recorded her phone calls over the next two days.

Matagaro called Bukana to tell him where she was staying. Bukana's brother later told Matagaro that "Moses" had been contacted and given the phone number to her hotel room. Shortly thereafter, Matagaro received two telephone calls from an individual whose voice the agents later identified as Lawal's. Lawal told Matagaro that he would come to the hotel very soon. Twenty minutes later, Lawal arrived at the hotel accompanied by Tunji Soetan. Lawal waited in the car while Soetan went to Matagaro's room to pick up the shoes. Outside the hotel, agents waited for Soetan to return, and arrested both Soetan and Lawal and took them to a local police station.

While Lawal was in a holding cell, an agent handed him a waiver of Miranda rights form. The agent read it to Lawal and asked Lawal if he understood it. After stating that he understood each provision of the Miranda waiver form, Lawal signed it and made several incriminating statements. Lawal explained that a man named Lekan contacted him the previous day and instructed him to meet a woman at a local hotel to pick up a pair of shoes. He was told that the shoes contained heroin. Lawal confessed that he went to the hotel to pick up the shoes and that he planned to deliver the heroin to Lekan. Lawal also admitted that he had made several drug deliveries in the past for both Lekan and his wife.

Before his trial, Lawal moved to suppress his statements on two grounds. First, he argued that the failure to advise him of his right to contact the Nigerian consul violated Article 36 of the Vienna Convention on Consular Relations ("Article 36"), and that the only appropriate remedy was to suppress his statements. Second, Lawal maintained that his confessions were involuntary because he did not knowingly waive his Miranda rights. The district court rejected both arguments and allowed the government to introduce Lawal's confessions at trial. Having been convicted and sentenced, Lawal now challenges the denial of his motion to suppress.

Discussion

Because Lawal's appeal of the district court's denial of his motion to suppress raises only questions of law, we apply a de novo standard of review. See United States v. Williams, 209 F.3d 940, 942 (7th Cir. 2000). As to Lawal's first contention, the government admits that it did not advise Lawal that he could contact the Nigerian consul until after he had confessed. The provision of the Vienna Convention on which Lawal relies states:

(1) With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

* * *

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.]

Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 100, 596 U.N.T.S. 261. While some courts,

including ours, have had the opportunity to decide whether Article 36 creates individual rights enforceable in judicial proceedings, all have sidestepped the issue. See Breard v. Greene, 523 U.S. 371, 376 (1998) (per curiam); United States v. Chaparro-Alcantara, No. 99-2721 & 99-2874, 2000 WL 1182450, at *7 (7th Cir. Aug. 21, 2000); United States v. Cordoba-Mosquera, 212 F.3d 1194, 1196 (11th Cir. 2000) (per curiam); United States v. Lombera-Camorlinga, 206 F.3d 882, 885 (9th Cir. 2000) (en banc); United States v. Li, 206 F.3d 56, 60 (1st Cir. 2000). Likewise, we need not decide the issue today because it does not affect our disposition of this case.

Even assuming Lawal has an enforceable right and that his right was violated, we have previously held that the exclusionary rule is not an appropriate remedy for an Article 36 violation. Our recent opinion in United States v. Chaparro-Alcantara is dispositive of this issue. See 2000 WL 1182450, at *8; accord Cordoba-Mosquera, 212 F.3d at 1195-96; Lombera-Camorlinga, 206 F.3d at 886; Li, 206 F.3d at 60. In Chaparro-Alcantara, we determined that since there is no general exclusionary rule for international law violations, suppression of evidence is appropriate "only when the treaty provides for that remedy." See 2000 WL 1182450, at *7. We read Article 36 as not providing such an extraordinary remedy. See id. at *8. Accordingly, we conclude that the district court properly admitted Lawal's confessions into evidence even if the government failed to observe Article 36 because suppression of that evidence would have been inappropriate.

Lawal next argues that the district court should have suppressed his statements because they were not made knowingly, voluntarily, and intelligently, as required by the Fifth Amendment. According to Lawal, his statements were involuntary because his unique personal characteristics made it impossible for him to fully understand his rights or the implications of waiving those rights. Lawal explains that he did not comprehend his rights because he is not familiar with the American legal system, he was not informed of his right to contact his consul, he suffers from paranoia, and he comes from a country where he would have been beaten or

tortured if he did not comply with police demands. The government counters by pointing out that Lawal does not claim any improper or coercive conduct by the law enforcement officials and without such an allegation his confession cannot be viewed as involuntary.

"A confession is voluntary if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." Watson v. DeTella, 122 F.3d 450, 453 (7th Cir. 1997) (citations omitted). In Colorado v. Connelly, the Supreme Court stated: "[w]e hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause . . . ." 479 U.S. 157, 167 (1986). In Watson, we interpreted this to mean that "[a]bsent a showing of some type of official coercion . . . a defendant's personal characteristics alone are insufficient to render a confession involuntary." 122 F.3d at 453.

In this case, there is no factual basis for a finding that Lawal involuntarily incriminated himself. Lawal fails to allege any misconduct, abuse, or physical or mental coercion by the police who questioned him; instead, Lawal builds his entire argument on his unique personal characteristics. Without showing some official coercion, Lawal's argument fails. Because there was no suggestion of police coercion, the district court correctly denied Lawal's motion to suppress his confessions as involuntary./2

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

/1 Lawal came to the United States on a temporary worker's visa and overstayed the visa. Lawal was, therefore, illegally in the United States at the time of his arrest.

/2 Lawal also claims that the district court erred by not holding an evidentiary hearing to deter-

mine whether his statements were voluntary. There was no error here because without a claim of official misconduct his argument fails as a matter of law. In any event, the record illustrates that Lawal knowingly waived his right to an evidentiary hearing after consulting with his attorney.