**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**FOGAVA`A FONOTI aka FOGAVA`A ENOKA, Defendant.**

High Court of American Samoa
Trial Division

CR No. 99-00

April 23, 2001

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
   For Defendant, Bentley C. Adams III, Assistant Public
   Defender

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This case concerns an October 12, 2000, charge against Fogava`a Fonoti, a.k.a. Enoka ("Enoka"), a citizen of Samoa, by American Samoa Government ("ASG"), for unlawful possession of a controlled substance under A.S.C.A. §§ 13.1022 and 13.1006, to which Enoka pled not guilty. Enoka filed a motion seeking to suppress certain statements of his made August 3, 2000, as well as all evidence seized on that date.

On August 3, 2000, Enoka arrived in Pago Pago harbor on the ship *MV Lady Naomi*. During a routine border search, he was found by Customs Officer Pa`uulu Lagai ("Lagai") to be carrying what was later verified as

4.5 grams of marijuana. When Enoka first approached the inspection table, at about 7:35 a.m., he claimed that he had nothing to declare and that everything with him was his own. Lagai inspected Enoka's carry-on bag and *umu*, and then asked Enoka to hand over the black waist pouch he was wearing. One of the pockets was locked, and Lagai asked Enoka to open it. Enoka took a key out of his pants pocket and opened the compartment, revealing a yellow plastic bag appearing to contain marijuana. Lagai seized the bag and its contents. He then turned Enoka and the items over to Captain Jeannette Thompson ("Thompson"). Thompson escorted Enoka to the Customs Office and notified Detective Lima Togia of the Department of Public Safety's Vice and Narcotics unit ("Togia"). Togia arrived and performed an on-site field test on the substance that proved positive for tetrahydrocannabinols ("THC"), the active ingredient of marijuana. At 9:00 a.m., Togia escorted Enoka and the seized items to the Department of Public Safety ("DPS"), where the suspected marijuana was weighed at 4.5 grams.

At 9:40 a.m., Togia advised Enoka of his constitutional rights in the Samoan language. In a written statement made and signed thereafter, Enoka stated that he received the waist pouch by someone who lived with his brother, and was told to take it with him to American Samoa where someone would be waiting for it on the wharf wearing a light yellow or beige-colored hat. Enoka stated that he did not know and was not suspicious of what the waist pouch contained, though he was told not to open it.

Enoka claims that Togia threatened to hit him on the head with a chair if he did not make this statement. ASG denies that threats were made, but rather that Enoka waived his rights and voluntarily gave a statement. We note that Togia was cordial enough so as to drive Enoka to his on-island *aiga* to deliver his *umu*. He then took Enoka out to lunch.

On August 7, Enoka visited Togia at the police station and attempted to exchange a bag of Samoan cocoa for his travel documents. He also stated that he would work for Togia in return for Togia's helping him out on the case. Enoka returned a few minutes later with a person recognized by Togia. Both persons asked for Enoka's travel papers but were told to leave. Enoka returned twenty minutes later and offered Togia forty dollars to help him out. Togia warned Enoka of the serious consequences of bribery, but gave back Enoka's documents and allowed him to depart.

## I. Motion to Suppress Statements

Enoka moves to suppress all statements made to officials on August 3, 2000. He argues that he was not given the opportunity to apply for

appointed counsel despite being subject to custodial interrogation, that he was not advised of his *Miranda* rights, and that he did not make a valid waiver of those rights. He furthermore argues that he was not informed of his Vienna Convention right to communicate with a consular official prior to taking his statement. We consider these arguments in turn.

*A. Miranda Rights*

We find as a matter of fact that Enoka received the *Miranda* warnings at DPS at 9:40 a.m. in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). We further find that Enoka validly waived these rights. Enoka claims that Togia threatened to hit him on the head with a chair if he did not make the statement, but this claim is substantially discredited by contradictions and inconsistencies in Enoka's testimony, as well as his apparent lapses in memory regarding major events such as whether or not he returned to Western Samoa after his release from jail or whether or not he was rearrested one month later. We thus find that Enoka received and waived his *Miranda* rights. His statement was voluntary and therefore admissible.

We furthermore do not accept Enoka's argument regarding his lack of opportunity to apply for appointed counsel. Included in the *Miranda* rights given to Enoka was the right to the presence of an attorney, and the fact that he would be appointed an attorney if he could not afford one. After hearing and waiving these rights, Enoka was with Togia in custody for almost an entire working day. Enoka had plenty of opportunity to apply for appointed counsel, both while he was under interrogation as well as under the later, informal circumstances of visiting his family and having lunch with Togia.

*B. Right to Communicate with Consular Official*

Enoka claims that he was not notified of his right to communicate with consular officials in violation of the Vienna Convention on Consular Relations ("Vienna Convention"), April 24, 1963, 21 U.S.T. 77. Article 36(1)(b) of the Vienna Convention states:

> (1) With a view to facilitating the exercise of consular functions relating to nationals of the sending State: . . .
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the

person concerned without delay of his rights under this sub-paragraph[.]

■ The Supremacy Clause of the U.S. Constitution may sometimes require that courts exclude evidence where this is explicitly required by a treaty or by executive agreement. U.S. CONST. art. VI, Cl. 2; *see also* 22 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1431 (2d ed. 1990). For example, the applicable extradition treaty determines the admissibility of evidence in an extradition proceeding. *United States v. Rauscher*, 119 U.S. 407, 421-24 (1886); *O'Brien v. Rozman*, 554 F.2d 780, 782-83 (6th Cir. 1977); *see also United States v. Flores*, 538 F.2d 939, 945 (2d Cir. 1976). Also, federal courts have recognized a judicially enforceable right to request consular notification in deportation proceedings based on INS regulations which embodied the Vienna Convention provisions. *United States v. Rangel-Gonzales*, 617, F.2d 529, 532 (9th Cir. 1980); *United States v Calderon-Medina*, 591 F.2d 529, 531-32 (9th Cir. 1979); 8 C.F.R. §242.2(e).

■ Because the Vienna Convention is a ratified treaty, its provisions must be regarded as "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2; *Breard v. Greene*, 523 U.S. 371, 376 (1998) (per curiam). The Vienna Convention, however, makes no provision for the remedy of suppression of evidence where the constitutional notification requirement has not been met. Without such explicit provision, we are unwilling to supply such a remedy, especially where doing so would contravene the apparent intent expressed in the preamble to the Vienna Convention. The preamble states that:

> [T]he purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States.[1]

■ Other remedies for violation of the consular notification requirement of the Vienna Convention may be possible, but exclusion of evidence is not one. This issue was explicitly treated by the Ninth Circuit in *United States v. Lombera-Camorlina*, 206 F.3d 882 (9th Cir. 2000) (en banc), and the Seventh Circuit in *United States v. Lawal*, 231 F.3d 1045 (7th Cir. 2000). Both cases involved foreign nationals invoking the Vienna Convention to suppress statements that were obtained without their having been notified of a right to contact their respective consuls. *Lombera-Camorlina*, 206 F.3d at 883-84; *Lawal*,

---

[1] The Supreme Court has left open the question of whether the Vienna Convention actually creates judicially enforceable rights. *See Breard v. Greene*, 523 U.S. 371 (1998).

231 F.3d at 1047. Both courts ruled that violation of the Vienna Convention consular notification requirement does not require suppression of subsequently-obtained evidence in a criminal proceeding against a foreign national. *Lombera-Camorlina*, 206 F.3d 884; *Lawal*, 231 F.3d at 1048. Further, the fact that a foreign national was not informed of the right to notification following arrest as required by the Vienna Convention does not warrant exclusion of post-arrest statements made by such national in subsequent prosecutions. *Lombera-Camorlina*, 206 F.3d at 884-87; *Lawal*, 231 F.3d at 1048. The circuits cite various reasons for these rulings, including the lack of explicit intent to grant the remedy of suppression of evidence in the treaty, the absence of such a policy with respect to criminal procedure by any statutory body of the United States, as well as practical problems and expense should the remedy be judicially enforced. *Lombera-Camorlina*, 206 F.3d 884-89; *Lawal*, 231 F.3d at 1048-49.

It is true that, upon his detention and arrest, the Samoan national Enoka was not informed of the Vienna Convention requirement of consular notification. It is also true that he did not make any request to speak with a Samoan consul, which, incidentally, does not exist in American Samoa. Lagai and Togia's apparent failure to warn Enoka of his right to notify consul may constitute a violation of the Vienna Convention requirement. However, such a failure is not accompanied by the remedy of exclusion of evidence. Adoption of the suppression remedy may be inevitable given the increasing interdependency of diverse markets prompting the need for the greater protection of human rights of traveling nationals. However, until amendments grant international treaties explicit control of particular areas of domestic law, and until such language is signed, ratified and affirmed by the executive, legislatures and the courts, we are not inclined to assume the authority to fashion new rights out of ideal but ineffectual language, nor to override international law by imputing domestic practice. Until the federal courts of the United States interpret the U.S. Constitution to allow otherwise, we must conclude that the Vienna Convention does not create a remedy of suppression of evidence due to failure by government authorities to apprise a detained or arrested foreign national of a right to notify consul.

## II. Motion to Suppress Evidence

Enoka further claims that the evidence obtained from him while subject to an ASG customs search in American Samoa was illegally seized as the fruit of a warrantless search where he had a reasonable expectation of privacy, where there was no probable cause or reasonable and articulable suspicion of criminal activity, nor exigent circumstances to excuse the warrant requirement, nor knowing and voluntary consent to the search. The issue before the court is thus whether the routine search of Enoka's

waist pouch, conducted by customs officer Lagai, was rendered illegal due to lack of a warrant, probable cause or other exigent circumstances.

■ Article I, § 5 of the Revised Constitution of American Samoa affords to all individuals certain protections against unreasonable searches and seizures by the government. The Fourth Amendment of the U.S Constitution also guarantees these protections. However, the United States Supreme Court has made it clear that a border search may be subject to a significantly less demanding standard than that required for searches within the interior. *United States v. Montoya de Hernandez*, 473 U.S. 531, 539-40 (1985). Specifically, the Supreme Court has ruled constitutional those federal regulations granting customs authorities plenary authority to conduct routine searches and seizures at the border without probable cause or a warrant. *Id.; United States v. Ramsey*, 431 U.S. 606, 616-17 (1977); 19 U.S.C.A. §§ 1467, 1481, 1582; 19 C.F.R. § 162.6, 162.7 (1984). Although entrants have a reasonable expectation of privacy in border crossings, their privacy interest is lessened. *Ramsey*, 431 U.S. at 616-17.

■ For similar reasons, this Court has also held upheld as constitutional A.S.C.A. § 27.1002(a), the statutory provision that authorizes border searches.[2] *Am. Samoa Gov't v. Pua`a*, 31 A.S.R.2d 73, 78 (Trial Div. Nov. 22, 1996); *Am. Samoa Gov't v. Vagavao*, 3 A.S.R.3d 72, 75 (Trial Div. Feb. 4, 1999); *see also* REV. CONST. OF AMERICAN SAMOA art. I, § 3.

■ Enoka arrived in American Samoa from Samoa, which, however conjoined in common heritage, language, and consanguinity, is lawfully regarded as an independent and foreign state. He was thus subject to the statutorily authorized and mandated border search by the customs official Lagai when the contraband was found on his person. Furthermore, Enoka's waist pouch was worn in plain view on the outside of his clothing. The routine search of such an article of luggage, requiring no patdown or other such bodily incursion, does not invoke constitutional protections. *Ramsey*, 431 U.S. at 616-17. In short, Enoka had no privacy interest with respect to the waist pouch he was wearing, at the border, when he entered this territory. We thus conclude that the contraband seized, is admissible.

---

[2] A.S.C.A. §27.1002(a) specifically states that:

> All persons entering or leaving American Samoa may be searched by a customs officer. . . [who] may require the owner or his agent or other person having charge or possession of any trunk, traveling bag, sack, valise or other container, or any close vehicle, to open it for inspection.

The defendant's motion to suppress is denied.

It is so ordered.